[Crim. No. 1364. Fourth Dist. July 18, 1958.]

THE PEOPLE, Respondent, v. CARLTON HAMBRICK, Appellant.

*Assigned by Chairman of Judicial Council.

Dean E. Yale, Jr., under appointment by the District Court of Appeal, and Yale, Wilson, Summers & Yale for Appellant.

Edmund G. Brown, Attorney General, and Carl Boronkay, Deputy Attorney General, for Respondent.

MUSSELL, Acting P. J.—Defendant was charged with the crime of burglary in that on or about October 20, 1957, he did wilfully enter a building known as Valu-Mart in the city of San Diego with intent to commit theft. Three prior felony convictions alleged in the information were admitted and, after trial by jury, defendant was found guilty of the crime of burglary in the second degree. His application for probation and motion for new trial were denied and he was sentenced to the state's prison. He appeals from the judgment and from the order denying a new trial.

Appellant does not question the sufficiency of the evidence to support the judgment of conviction but contends that he was deprived of due process of law because of the trial court's misconduct, and that the court unduly restricted the cross-examination of the prosecution's witness.

On October 20, 1957, the appellant entered the Valu-Mart grocery store in the city of San Diego at about 4:30 p. m. At the time he was wearing two pairs of trousers, one over the other, with the inside pair tied at the ankles with string or shoe laces. Richard E. Reilly, coowner of the store, who was working at the check stand, observed the appellant and asked Mr. Cooper, a partner in the store, to go upstairs and watch him. Reilly saw the defendant attempting to put a package of bacon down the front of his trousers and a few minutes later observed appellant standing at the check stand. He had nothing in his hands, did not attempt to make a purchase, but appeared to be waiting for someone. Cooper testified that

he went to the back of the store and upstairs where he could observe the whole store; that he watched the appellant through a set of binoculars and observed him slipping two packages of bacon over his belt and into his trousers; that the appellant then proceeded across the store, picked up a pound of sausage, returned to his previous location, and put the sausage in his trousers; that he repeated this operation with a pound of bacon or another pound of sausage, and started toward the front of the store; that he (Cooper) then started down stairs. Appellant left the store through the front door and Reilly and Cooper followed him and asked him to reenter the store and to remove the bacon and sausage from his trousers. This appellant refused to do and Cooper and Reilly started to remove the groceries through the bottom of the legs of the inner pair of appellant's trousers. After the merchandise was removed, the police officers were called and the appellant was placed under arrest.

. Officer Reierson of the San Diego police department had a conversation with appellant on October 21, 1957, in which the appellant stated that they had caught him stealing and admitted that he went into the store to steal. When asked why he tied his pant legs, appellant stated that he didn't, that he had "the stuff" in his hands. However, he later admitted that he had the merchandise in his trousers, and that he tied his pant legs before he had gone into the store so that he could put the merchandise into them.

At the trial appellant testified that he entered the market at the time alleged, took a watermelon from the vegetable stand, paid 40 cents for it, "set it in the door," and then decided to get some bacon and sausage; that he had "it in my hand" when he went back to pay for it; that he stood at the check stand for a while and then went around it and out the front door, leaving the watermelon; that just as he started through the door, the checker called him back, searched him, and found the merchandise in his pant legs; that at the time he entered the market he did not intend to steal anything but went there for the purpose of purchasing a watermelon and some lunch meat and intended to pay for it, but that when he saw the "people was busy there," he left the watermelon and walked out the door.

 The first contention made by appellant is that the trial court's cross-examination of the appellant amounted to advocacy for the prosecution. The record shows that following appellant's testimony as to the circumstances of his appre-

hension by the proprietors of the grocery store and the cross-examination by the prosecutor as to appellant's hiding groceries in his trousers, the trial court proceeded to ask the defendant a number of questions relating to the manner in which he was dressed at the time he entered the store. Appellant was asked whether the second pair of trousers were tied at the bottom to keep out the draft and how many pounds the appellant could carry in his pants without it "jumping out of your sock." He was also asked whether he knew how much his pants would hold and whether he wore them to keep warm. Appellant argues that from the form of these questions and the manner and tone of the trial judge the jury inferred that the judge disbelieved appellant's testimony. However, the right of a trial judge to question a witness for the purpose of developing all of the pertinent facts is not disputed. It has been repeatedly held that if a judge desires to be further informed on certain points mentioned in the testimony it is entirely proper for him to ask proper questions for the purpose of developing all the facts in regard to them. Considerable latitude is allowed the judge in this respect as long as a fair trial is indicated both to the accused and to the People. Courts are established to discover where lies the truth when issues are contested, and the final responsibility to see that justice is done rests with the judge. (*People* v. *Lancellotti,* 147 Cal.App.2d 723, 730 [305 P.2d 926].) Appellant in his direct testimony had explained that since 1954 he had worn two pairs of trousers, one over the other, because of his tubercular condition. It was proper for the trial judge to inquire into appellant's explanation of the unusual manner of dress. It is apparent that the judge was attempting to determine whether appellant wore the inner pair of trousers, tied at the ankle, for the express purpose of concealing pilfered merchandise. In *People* v. *Corrigan,* 48 Cal.2d 551, 559 [310 P.2d 953], it is said:

"The judge was obviously seeking to elicit or clarify testimony on material points, and it is the right and the duty of a judge to conduct a trial in such a manner that the truth will be established in accordance with the rules of evidence."

No objection was made to the questions asked the witness by the judge, nor did appellant make a motion to strike the questions or answers. A judge's examination of a witness may not be assigned as error on appeal where no objection was made when the questioning occurred. (*People* v. *Corrigan, supra,* 48 Cal.2d 551, 556.) No objections to the

tone of the voice of the judge were made in the court below and there is no reference thereto contained in the record on appeal. Therefore, no objection thereto can now be made on appeal. (*People* v. *Sakelaris,* 151 Cal.App.2d 758, 759 [312 P.2d 263].)

█ Mr. William Buono, a witness for the prosecution, testified that appellant, in December, 1956, was arrested in Buono's Market for shoplifting under circumstances almost identical to the instant case. He stated he was not certain whether appellant was the same person involved in the December, 1956, incident. The court then said, "Q. Look at him again. Do you think it is the same fellow?", to which Mr. Buono replied, "A. He looks to be the same person." Appellant asserts that the identification of appellant as the person involved in the December, 1956, incident was and should have been a question of fact for the determination of the jury. However, it was proper for the court to question the witness in an endeavor to clarify his testimony and appellant's assertion that the question shows "advocacy for the prosecution" is unfounded. (*People* v. *Lancellotti, supra,* 147 Cal.App.2d 723, 730; *People* v. *Corrigan, supra,* 48 Cal.2d 551, 559.) Appellant further asserts that by reason of the manner and tone of the trial judge while asking such question, together with his emphasis on certain words, it was clearly indicated to the jury that the judge was satisfied that Mr. Buono had satisfactorily identified appellant as the same person involved in the December, 1956, incident. No timely objections were interposed in this connection and for the reasons hereinabove stated, this argument cannot be considered on appeal.

█ Appellant's contention that the trial court unduly restricted the cross-examination of Mr. Cooper is without merit. After appellant's counsel had questioned Cooper extensively as to whether appellant had purchased a watermelon upon entering the store and whether a melon was on the counter when appellant was returned to the store, the court stated that unless the appellant had the watermelon in "his pants," he (the court) was "not much concerned about it."

█ It is the duty of the trial judge to restrict the cross-examination of witnesses to reasonable limitations (*People* v. *Spreckels,* 125 Cal.App.2d 507, 514 [270 P.2d 513]), and it does not appear that appellant was prejudiced by the exclusion of any material evidence in this connection. █ The scope of the cross-examination is within the sound discretion of the trial judge and his rulings will not be disturbed on ap-

peal in the absence of a clear abuse of discretion. (*People* v. *Apodaca*, 132 Cal.App.2d 340, 341 [282 P.2d 182].) No abuse of discretion appears herein.

It is claimed that the court erred in excluding testimony as to the value of the merchandise taken by appellant. However, the crime of burglary was complete when appellant entered the store with intent to commit larceny therein (Pen. Code, § 459) regardless of the value of the property sought to be stolen (*People* v. *Bayne*, 136 Cal.App. 341, 348 [28 P.2d 1068]).

A review of the entire record herein fails to disclose prejudicial misconduct on the part of the trial judge. The judgment and order denying new trial are affirmed.

Griffin, J., and McCabe, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.