[Crim. No. 1423. Fourth Dist. Oct. 8, 1959.]

THE PEOPLE, Respondent, v. WALLACE REID YORK, Appellant.

*Assigned by Chairman of Judicial Council.

Harold D. Cornell for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Robert M. Sweet, Deputy Attorney General, for Respondent.

MUSSELL, J.—Appellant was charged with the crime of murder (Pen. Code, § 187) in that on or about the 18th day of March, 1952, he did murder one Yale B. Rediker, and in a second count of the information appellant was charged with attempted robbery of said Yale B. Rediker. It was further alleged that at the time of the commission of said offense appellant was armed with a deadly weapon, to wit, a gun, and that appellant had been previously convicted in the State of Texas of four felonies; one on June 27, 1949 (theft of an automobile), one on July 14, 1949 (forgery), one on October 16, 1950 (burglary), and one on October 18, 1950

(robbery with firearm). Appellant admitted the first two prior convictions and the last two were stricken by the court upon information offered by the district attorney that unconditional pardons had been granted as to them by the Governor of Texas. A jury trial resulted in verdicts finding the appellant guilty of murder in the first degree and attempted robbery in the first degree. The punishment on the murder charge was fixed by the jury at life imprisonment, and this appeal is from the judgment and order denying a new trial.

On March 18, 1952, at about 6 p. m. appellant entered the "Economy Market" in San Diego. Mr. Stewart, lessee of the meat concession, noticed the appellant standing in front of a counter holding a package in his hand and apparently looking for something else. He was dressed in dark shoes, dark pants, a gray "Eisenhower type jacket," and a gray hat. Stewart left the meat counter and as he passed appellant he asked if he could help him. Appellant "mumbled" something and as Stewart started back up the aisle he heard appellant say something to the effect that this was a "stickup." Appellant at this time was standing in front of the check stand and a Mr. Rediker, the owner of the market was behind the check stand by the cash registers. Rediker then said "There it is, go ahead and take it." Appellant then reached across the counter to get the money and as he did so Rediker hit him. Appellant and Rediker "struggled" and a shot then "went off." Rediker then stumbled away from the check stand and fell to the floor, and Stewart then saw a gun in appellant's hand. Appellant then ran out of the store and down the street, and Rediker was taken to a hospital where he died the following morning as the result of a bullet which had entered his left side and exited on the right side of his back, shattering his liver and resulting in hemorrhage. A witness who had stopped her car at the curb in front of a bakery next door to the market testified that she saw appellant running up the street with his head back and a gun in his hand; that he was wearing dark shoes, dark trousers, a gray Eisenhower jacket and a gray hat. Appellant was arrested in San Diego on March 26, 1952, and was taken back to Texas where on November 24, 1952, he mailed the following letter to the sheriff of San Diego County:

"Dear Sir:

"I am writing this letter in regards to crime which I committed in your County while I was in San Diego in March of

this year when a grocery store man was killed. I was broke and needed some money to live on and operate my automobile. I was living in a small hotel in downtown San Diego when I got desperate to rise money, but it failed after all when I was challenged by the man who resisted in this store. As well as I remember there was one other man in the store working in the back part. I suppose it will probably be better to try and help myself rather than be worried about it all my life. I was over in Los Angeles for a while but did not commit any crime over there. Will you please advise me on what to do about this matter as I just have seven years to do in Texas Prison System.''

Sergeant Walk of the San Diego Police Department went to Texas and interviewed appellant at the Jasper County jail. In this interview appellant stated that while he was in San Diego he decided to pull a "stickup" and entered a market after parking his car a few blocks away; that there were two men in the store, one behind the cash register and the other in the back of the store; that he walked to one of the grocery shelves, picked up one or two objects, and then went to the check stand and "drew" his gun on the man behind the register, telling him that this was "stickup"; that the man backed away from the register and told him to "Go ahead and take it" and as he reached for the money the man "swung on him"; that a short struggle followed during which a coffee grinder fell off the counter, and when the grocer was at an angle to him he shot him and he fell to the floor; that he then ran out of the market without getting any money; that he hid the gun in a clump of bushes near the ocean on the highway to Oceanside; that he returned to San Diego the following day and about 10 days thereafter was arrested on a "car deal" and placed in jail. He described the gun which he used as a .38 special side-breaking revolver, and indicated that he might have been wearing an "Eisenhower type" jacket. After this conversation Officer Walk obtained the services of a court reporter and appellant's statement was reduced to writing. Appellant read and signed it and indicated that he was telling the police about the incident because he was "worried over it and just wanted—whatever the outcome was to be—to get it finished." In his testimony at the trial appellant admitted confessing to the crime involved to Sergeant Walk and stated that his purpose in the confession was to secure a release from the Texas penitentiary.

Appellant first contends that the trial court committed

prejudicial error in refusing to admit evidence showing a prior confession pattern on his part, and evidence of his state of mind in confessing to the crimes here involved. These contentions are not supported by the record. Appellant in his testimony did not deny that he had made the confession but contended that he had confessed to a crime which he did not commit, this in the hope that he would be returned to California for trial rather than be incarcerated in a Texas prison for other crimes committed there. Two of the four prior convictions alleged were stricken at the request of the district attorney. Appellant's counsel objected to the striking of these priors, stating that he wanted to discuss a "confessional history or pattern" on the part of the appellant. The district attorney then objected to any reference to these prior convictions as being self-serving and hearsay. Appellant testified to the effect that he had been pardoned by the Governor of Texas on the ground of "mistaken identity of armed robbery"; that he had been subjected to brutal treatment while being previously confined in Texas; that he thought if he confessed to the California crimes he would be returned to California and thus escape further brutal treatment in Texas. Appellant's counsel made certain offers of proof and argued that evidence regarding the conduct of fellow prisoners in the Texas prison should be admitted as bearing on appellant's purpose in making the confession in the instant case. However, appellant was permitted to testify regarding prison conditions in Texas and in his statement taken in Texas he stated that he made the statement because he was "just worried over it, for one thing. I just wanted—whatever the outcome was to be—why, I just wanted to get it finished, whatever it is." It appears, therefore, that appellant was permitted to testify as to his state of mind in making the confession in the instant case. Furthermore, it is not contended by appellant that the evidence is insufficient to sustain the judgment of conviction, without the challenged confession, and there is ample evidence in the record showing identification of appellant and the commission of the crimes charged independently of said confession.

 Appellant argues that the trial judge committed prejudicial error by interjecting statements tending to ridicule or derogate appellant by cross-examining appellant and defense witnesses for impeachment only and by identifying himself with the prosecution witnesses and thus influencing the jury for the prosecution. These arguments are likewise with-

out merit. Appellant's counsel in his brief admits that he cannot point to one judicial comment and condemn it as the essentially prejudicial comment. He refers in his brief to certain pages in the transcript containing testimony which he claims supports his contention relative to the remarks made by the trial court. We have examined the record in this connection and find no reversible error. Moreover, appellant failed to object to the remarks and conduct of the court during the trial. ■ In *People* v. *Hambrick*, 162 Cal.App.2d 239, 243 [327 P.2d 570], it is held that:

"A judge's examination of a witness may not be assigned as error on appeal where no objection was made when the questioning occurred. (*People* v. *Corrigan, supra,* 48 Cal.2d 551, 556 [310 P.2d 953].) No objections to the tone of the voice of the judge were made in the court below and there is no reference thereto contained in the record on appeal. Therefore, no objection thereto can now be made on appeal. (*People* v. *Sakelaris,* 151 Cal.App.2d 758, 759 [312 P.2d 263].)"

■ And in *People* v. *Cheary,* 48 Cal.2d 301, 316 [309 P.2d 431], the court said:

"A claim of misconduct on the part of the trial court will ordinarily not be considered on appeal unless the party who complains has given the trial court an opportunity to correct the error or false impression. (*People* v. *Amaya,* 40 Cal.2d 70, 78 [251 P.2d 324] and cases there cited.)"

■ Moreover, the court instructed the jury in this connection as follows:

"If, during this trial, I have said or done anything which may have suggested to you that I am inclined in favor of the claims or positions of either party, you will not suffer yourselves to be influenced by any such suggestion.

"I have not expressed nor intended to express, nor have I intended to intimate, any opinion as to which witnesses are or are not worthy of belief, or what inferences should be drawn from the evidence. If any expression of mine has seemed to indicate an opinion relating to any of these matters, I instruct you to wholly disregard it.

"During the course of the trial I may have asked questions of certain witnesses. My object was to bring out in greater detail facts not then fully covered in the testimony. You are not to assume, because I have asked any questions of the witnesses, that I hold any opinion as to the matters to which the questions related.

"An Information accusing one of the commission of a crime is a mere formal charge, is not evidence, and is not to be treated as evidence, nor is the fact that the defendant has been arrested, charged with crime, or on trial, to be considered by the jury as evidence, nor are you authorized in the slightest degree to infer or presume the guilt of the defendant therefrom.''

█ Finally, the appellant contends that the trial court committed prejudicial error in refusing to allow him to qualify a polygraph expert out of the presence of the jury. In proceedings held in the chambers of the trial judge, before any evidence had been received, the prosecuting attorney said that he understood that the appellant had been given a lie detector test, and stated that he would object to any attempt to introduce evidence relative to the taking of this testimony or the results thereof. The trial judge stated that it was not admissible on either side and that there would be no reference to the testimony in any "manner, shape or form." At the close of the testimony for the defense this matter was again discussed out of the presence of the jury, and counsel for appellant indicated that he proposed to qualify the person who had given the test as to his skill, experience and background. At this time the court again stated that "lie detector evidence" was not admissible on behalf of either the prosecution or defense. Appellant admits that the appellate courts have heretofore determined that the polygraph had not reached a state of reliability necessary for opinion evidence, but contends that this court should now reexamine the reliability of such evidence. We are not in accord with this contention. █ In *People* v. *Carter*, 48 Cal.2d 737 [312 P.2d 665], the court said: "Lie detector tests do not as yet have enough reliability to justify the admission of expert testimony based on their results. (*People* v. *Wochnick*, 98 Cal. App.2d 124, 126-128 [219 P.2d 70] ; *People* v. *Porter*, 99 Cal. App.2d 506, 510-511 [222 P.2d 151].)''

In *People* v. *Porter*, 136 Cal.App.2d 461, 470 [288 P.2d 561], it is held that it is settled in this state that the results of a lie detector test are not admissible in evidence in a criminal case, and that any statements except admissions against interest made by the appellant during the course of the lie detector examination would be clearly self-serving declarations and hence inadmissible.

In the recent case of *People* v. *Jones*, 52 Cal.2d 636, 653

[343 P.2d 577], decided August 28, 1959, the Supreme Court said: "Moreover, the result of such a test is not admissible in a criminal case. The courts have consistently held that whether the test is a polygraph test, or a sodium amytal or sodium pentothal test, the results are not such as to be admissible for or against the defendant because of a lack of scientific certainty about the results (citing many authorities)."

In the instant case appellant did not offer evidence of any facts which would require a reexamination of the rules announced in the foregoing decisions.

Judgment and order denying a new trial affirmed.

Griffin, P. J., and Shepard, J., concurred.