**UNITED STATES of America,**
**Plaintiff,**

v.

**Richard RIDLING, Defendant.**

**Crim. A. No. 46732.**

United States District Court,
E. D. Michigan, S. D.

Oct. 6, 1972.

David J. Cook, Sp. Atty., Laurence Leff, Atty. in Charge, Dept. of Justice, Detroit, Mich., for plaintiff.

Robert S. Harrison, of Harrison, Friedman & Roberson, Detroit, Mich., for defendant.

## MEMORANDUM OPINION

JOINER, District Judge.

This is a perjury case. The Defendant is alleged to have made statements under oath before a Grand Jury which he knew were false. He has pleaded not guilty. As a part of his defense, he has indicated his intention to offer testimony of one or more polygraph experts who, he asserts will testify that, as a result of their tests, it is their opinion that he is telling the truth when he makes the statements that are alleged to be the basis for this indictment. The Court ordered a pretrial evidential hearing on the admissibility of the tests and the opinions of the polygraph experts. Under the circumstances indicated in this Opinion and subject to the conditions stated, the evidence will be admitted at the trial of this case.

The Court has heard evidence in this case from persons who are experts in the use of polygraphs to establish the value and reliability of the results of the tests. The evidence includes the following:

1. The basic theory of the polygraph.
2. The reliance on the polygraph by government agencies.
3. The reliance on the polygraph by private industry.
4. The comparative reliability of the polygraph and other scientific evidence such as fingerprint and ballistic evidence.
5. The opinions of the experts as to whether polygraph evidence would be a valuable aid in connection with the determination of the issues such as the one facing the Court in this case and in the administration of justice.

The evidence supports the statements set out in this Memorandum.[1]

The polygraph is a scientific device that measures and records a number of involuntary body responses to stress. It measures and records blood pressure changes, pulse changes, respiration changes, as well as changes in the skin's resistance to electricity. It appears that the sophistication of these measurements is constantly improving and that it is likely devices will be developed for use in the future to measure other involuntary body responses to stress.

The polygraph is based on the principle that the autonomic nervous system will respond to stressful conditions and that sympathetic parts of that system will respond involuntarily. These parts of the system are not controllable. Their reaction is automatic. It is well established that the sympathetic part of the autonomic nervous system causes internal organs of the body, the heart, the breathing apparatus, the perspiration glands, the stomach and others to change their activity when placed under stress, as for example, when confronted by an emergency. The polygraph measures some of the results of this automatic response to stress. Current versions of the device measure changes in the activity of some of these internal organs, for example, the changes in the blood pressure, pulse, respiration, and the sweat gland activity.

A lie is an emergency to the psychological well being of a person and causes stress. Attempts to deceive cause the sympathetic branch of the autonomic nervous system to react and cause bodily changes of such a magnitude that they can be measured and interpreted.

There are three types of interpretations that can be given a well conducted examination:

1. The subject is willingly not telling the truth.
2. The subject is telling the truth as he sees it.
3. The test is inconclusive, e. g. the examiner cannot tell if the subject is or is not telling the truth.

Not more than 6% of well conducted tests result in this third conclusion, and a number of them can be tested effectively on retest.

1. *Reid and Inbau, Truth and Deception (1966)*, contains a full discussion of the polygraph, as well as a full bibliography of writings on the subject.

For a test to be successful, it is important that the examination be conducted under controlled circumstances, that the subject cooperate with the expert, that appropriate scientific methods be used in connection with the questioning of the subject, that the subject understands the meaning of the questions as they are asked, that the recording device or polygraph be in good operating condition and be connected properly and that a person skilled in the interpretation of the polygraph charts make the interpretation of the test results.

There is in this country a reasonably well developed group of persons who consider themselves to be experts in the use of the polygraph. They have recently organized into national and state organizations to exchange ideas and to improve themselves. In some ways, they are looked down upon by members of the psychiatric and psychological societies. In part this comes from the limited educational background of many of the polygraph examiners and the mechanical and technical approach to their limited area of their expertise. However, the scientific psychological basis for the polygraph examination is well established.

Several major schools in the country offer courses in the giving of polygraph tests and the reading of polygraph results. Several different refinements to the technique of polygraph testing having to do with the specific order in which the questions are put to the subject have been developed by the experts. Opinions differ as to which of these techniques is best. Nothing, however, in the different techniques cast doubt upon the basic theory behind the polygraph. Experts assert that the record of one polygraph examination can be interpreted satisfactorily by another expert so long as that second expert knows the particular technique used in questioning the subject.

Police departments throughout the United States, various parts of the Government of the United States and industry utilize polygraph test results in their day to day operations. Experts testified that the reliability of the opinion of a qualified polygraph expert was higher than the opinions of ballistics experts and as high as the opinions of fingerprint experts.

All experts agreed that polygraph evidence would be a valuable aid in connection with determining the kinds of issues involved in this case and in the process of administering justice.

█ Although polygraph testimony is sometimes referred to as experimental and scientific evidence, McCormick on Evidence, 2d Ed. 1972, page 505, the evidence in reality is opinion evidence. The interrogation must be carefully arranged and supervised. The polygraph recordings must be interpreted. Only a person skilled in this art and science is qualified to interpret the results and that interpretation is stated in the form of an opinion.

At the beginning it must be noted that this, among all possible cases, is the best case for testing the admissibility of polygraph testimony. A perjury case is based on "willfully" or "knowingly" giving false evidence. The experts all agree that the polygraph examination is aimed exactly at this aspect of truth. A subject, they say, may be honestly mistaken as to a fact and, if he answers according to his honest belief, the operator will interpret the results as being a truthful answer.

Judicial opinions pertaining to the admission of polygraph testimony seem all to point toward exclusion, Marks v. United States, 260 F.2d 377 (10th Cir. 1958); Frye v. United States, 54 App. D.C. 46, 293 F. 1013 (1923); Sadowy v. Fay, 189 F.Supp. 150 (S.D.N.Y.1960); People v. York, 174 Cal.App.2d 305, 344 P.2d 811 (1959); People v. Jones, 52 Cal.2d 636, 343 P.2d 577 (1959); People v. Boney, 28 Ill.2d 505, 192 N.E.2d 920 (1963); State v. Bohner, 210 Wis. 651, 246 N.W. 314 (1933); People v. Becker, 300 Mich. 562, 2 N.W.2d 503 (1942); Hawkins v. State, 222 Miss. 753, 77 So.2d 263 (1955); State v. Holly-

wood, 138 Mont. 561, 358 P.2d 437 (1960); Parker v. State, 164 Neb. 614, 83 N.W.2d 347 (1957); State v. Foye, 254 N.C. 704, 120 S.E.2d 169 (1961); State v. Emery, 27 N.J. 348, 142 A.2d 874 (1958); Looper v. State, 381 P.2d 1018 (Okl.Cr.1963); Commonwealth ex rel. Hunter v. Banmiller, 194 Pa.Super. 448, 169 A.2d 347 (1961); Grant v. State, 213 Tenn. 440, 374 S.W.2d 391 (1964); Placker v. State, 171 Tex.Cr. R. 406, 350 S.W.2d 546 (1961); Davis v. State, 165 Tex.Cr.R. 456, 308 S.W.2d 880 (1958); Zupp v. State, 283 N.E.2d 540 (Ind.1972).

█ Although these opinions are entitled to great weight in considering the matter at this time, they are not persuasive insofar as they are predicated on the unreliability of the polygraph. This is a question to be determined in each case, United States v. Wainwright, 413 F.2d 796 (10th Cir. 1969). Techniques improve. The evidence in this case indicates that the techniques of the examination and the machines used are constantly improving and have improved markedly in the past ten years.

The historical process of developing the admissibility of opinions interpreting scientific evidence is a simple one.

Someone has an idea and a theory, e. g. that no two fingerprints are the same and that fingerprints can be analyzed, measured and catalogued; that alcohol in blood can be used to determine intoxication; that voices can be recorded, charted and analyzed to provide a means of comparison for the purpose of identification; that the principles of radar can be used to measure speed of vehicles. This and other persons develop the idea and theory until it has some acceptance.

When opinions interpreting the results are first offered in Court, the underlying premises require a great deal of proof, as well as does the proper use of these premises, the necessary controls used in the specific cases and the appropriate qualifications of the expert. On proper proof, the evidence becomes admissible. The attention of the Courts at this point seems to be directed at the proper qualification of an expert witness, including testimony, establishing the underlying theory.[2]

Finally, the underlying principles and premises become so well established and known that the only real issues for determination in connection with the reception of evidence is the proper use of the principles, premises and theories and the use of adequate controls in the specific case to assure good results. In other words, at this stage the Courts judicially notice the basic theories and premises. They need no longer be proved.[3] This is true today in the area of fingerprint identifications, ballistics identifications, blood tests for intoxication, radar and many others. Even so, properly qualified experts, persons knowledgeable in the theory and practice of the special field, are needed to relate the results and data to the issue in the case. Usually this involves the expression of an opinion by the expert.

█ Of course all efforts to have this kind of testimony admitted in Court requires that the opinion of the expert be relevant to the issue before the Court. The acceptance of the basic theory is a part of the process of making the evi-

2. McCormick on Evidence, 2d Ed. 1972, page 491: "Any relevant conclusions supported by a qualified expert witness should be received . . ." See Coppolino v. State, Fla.App., 223 So.2d 68, cert. denied 399 U.S. 927, 90 S.Ct. 2242, 26 L.Ed.2d 794 (1970) where a lack of unanimity among the profession was held to affect only the weight and not the admissibility of evidence. See also People v. Bobczyk, 343 Ill.App. 504, 99 N.E.2d 567 (1957); People v. Williams, 164 Cal.2d Supp. 858, 331 P.2d 251 (1958).

3. "General scientific acceptance" is a proper condition for taking judicial notice of scientific facts. . . ", McCormick on Evidence, 2d Ed. 1972, page 491. See also 3 Wigmore, Evidence, 795 3rd Ed. 1940; Frye v. United States, 54 App.D. C. 46, 293 F. 1013 (1923); Golaris v. Jewell Tea Co., 22 F.R.D. 16 (D.C.Ill. 1958).

dence relevant. The care used in the conduct of the test is another. The skill and qualification of the person interpreting the test and offering the evidence in the form of an opinion is important and, of course, the relationship of that opinion to the issues in the case, its probability of helping the jury, as balanced against any possible prejudicial effect of its use or misuse, must be considered.

The use of expert opinions interpreting the results of lie detector tests in Court is still at one of the first two stages, and judicial opinions denying admissibility give way to the developments in the science itself or in the techniques used in its application or in the interpretation of the results. The record in this case indicates that the theory of the polygraph is sound and that it is directly relevant to this case (a perjury case), and that therefore the cases denying admissibility on these grounds are not controlling.

The determination that the record in this case indicates that the state of the science is such that the opinions of experts "will assist the trier of fact to understand the evidence", Proposed Rules of Evidence for U. S. District Courts, Rule 702, is only the beginning point in assessing the admissibility of the evidence. The following problems are presented:

1. Is the evidence of such a nature that the jury will attach too much weight to it?
2. What is the effect of the privilege against self incrimination?
3. Will the trial process be upset by the use of the polygraph?
4. Is there a hearsay problem?

## WEIGHT OF EVIDENCE

The Court must always be alert to prevent the use of evidence that has marginal utility in the process of truth seeking if it is of such a nature so as to over-impress the jury.[4]

The evidence offered in this case, however, is not in any way remote to the issues to be determined. It goes to the very heart of the case. In comparable situations, the Courts do not reject evidence—radar for speeders, United States v. Dreos, 156 F.Supp. 200 (D.C.Md. 1958); fingerprints, People v. Chimovitz, 237 Mich. 247, 211 N.W. 650 (1927); ballistics evidence, Goodall v. United States, 86 U.S.App.D.C. 148, 180 F.2d 397 (1950); blood tests, Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), Kemp v. Gov't of the Canal Zone, 167 F.2d 938 (C.C.A. 5 1948); voice prints, Trimble v. Hedmans, 192 N.W.2d 432 (Minn.1971) and United States v. Raymond, 337 F.Supp. 641 (D.C.1972). The evidence is ad-

4. Proposed Rules of Evidence for U.S. District Courts, Rule 403, "value substantially outweighed by the damage of unfair prejudice." McCormick on Evidence, 2d Ed.1972, page 439, "unduly arouse the jury's emotions of prejudice, hostility or sympathy." State v. Flett, 234 Or. 124, 380 P.2d 634, 94 A.L.R.2d 1082 (1963), is a case in which defendant was being tried for the murder of her husband. The Court admitted into evidence that acts of infidelity by the husband had occurred only a few days prior to the killing, but did not admit into evidence those acts that had occurred months earlier, on the grounds that the latter have only marginal probative value because of the remoteness in time, and this value is outweighed by the danger of unfair prejudice. See also Lyda v. United States, 321 F.2d 788 (9th Cir. 1963) and Dan-

iels v. Dillinger, 445 S.W.2d 410 (Mo. App.1969). McCormick on Evidence, 2d Ed.1972, at page 491, states: "Particularly, probative value may be overborne by the familiar dangers of prejudicing or misleading the jury, . . ." At page 507, McCormick, supra, speaks of polygraph evidence and says, ". . . the explanation (of why polygraph opinions are rejected) can scarcely be found in any serious contention that even the opinion of a qualified expert in the field throws no light on the question of whether relevant statements made by a party or witness were sincere or not. The exclusion seems to rest more upon a judicial estimate of the weight that the trier of fact will give to the opinion, and a demand that the opinion be almost infallible because the trier will think it so."

mitted for its worth, and the expert who attempts to make more from it than he should seldom survives a good cross examination.

■ But it is urged that because the evidence does in fact go to the very heart of the case and because it has the aura of scientific acceptability, it should be rejected on the theory that too much weight will be given to it. In the other areas of scientific opinion mentioned above, science has been helpful on central issues and the opinions have not been rejected. Speed testers establish the central issue in speeding cases. Breathalizers and blood tests establish the central issue in cases involving intoxication. The fact is that, just as in these other cases, the relevancy of the polygraph evidence is high and its use will likely protect both society and the defendant.[5]

It is argued that polygraph use will result in the injection of many collateral issues in the trial. This could be the case if the Court were to permit its use on all witnesses as has been urged by the defendant in this case. This Court is not willing to go so far. But with appropriate techniques and procedures the admission of polygraph opinions about the defendant's statements should be valuable to the development of a just result. As to the defendant, the issues are not likely to be collateral but very directly involved. At the present time, the defendant can put his character in issue to establish the likelihood he did not do the act, Proposed Rules of Evidence for U. S. District Courts, Rule 404 (a)(1). A defendant who testifies may have his character challenged, Proposed Rules of Evidence for U. S. District Courts, Rule 608(a). These issues themselves are collateral but are well established and provided for in procedural rules as are their limitations. Fitting in

the polygraph opinion will require no alteration of these rules.

The problem, however, is accentuated by the fact that with the polygraph, the theory, the technique and the hardware seem to have outstripped the general acceptance of polygraph personnel in development. Although the profession of polygraph experts is becoming standardized and professionalized, it has not yet developed adequate ways and means to police itself. Although the profession has adopted a code of ethics and machinery exists in the professional organization to discipline the unqualified and unethical, the chance of serious impropriety on the part of polygraph examiners must be considered. Further controls over the admissibility of evidence are needed. In this case it is not sufficient for a person to testify that he has the minimum qualifications of an expert and thus be allowed to testify. The chance of fraud or mistake coupled with the great weight the opinions may have with the jury have given Courts pause in connection with the use of the test, People v. Sinclair, 21 Mich.App. 255, 175 N.W.2d 893 (1970) ; People v. Leone, 25 N.Y.2d 511, 307 N.Y.S.2d 430, 255 N.E.2d 696 (1969), and were there not other ways to provide balance and a check on the evidence, this Court would have serious doubts about whether the evidence should be admitted. Of course a stipulation of the parties should provide a way, McCormick on Evidence, 2d Ed. 1972 at page 507. But in these matters, in the absence of a rule permitting use otherwise, parties are not likely to agree.

The hurdle can be overcome, however, by the use of the Court's power to appoint experts, Federal Rules of Criminal Procedure, Rule 28; Proposed Rules of Evidence for U. S. District Courts, Rule 706. Because it may not be easy for the Court to determine the quality of the

---

5. There can be no doubt but that the standard of relevancy defined in Rule 4–01 of the Proposed Rules of Evidence for U.S. District Courts, "tendency to make the existence" of the fact to be proved "more probable or less probable than it would be without the evidence" is fully met. See Weinstein and Berger, Basic Rules of Relevancy in the Proposed Federal Rules of Evidence, 4 Georgia L.R. 43 (1969).

polygraph experts tendered by the defendant, it seems proper in such cases to cause polygraph experts of the Court's own choosing to be appointed who should be directed to test the defendant. The purpose of such test will be to provide an independent check on the opinion of the defendant's expert and to make certain that the subject is testable. In the event that the expert concludes positively that the subject is or is not telling the truth, the expert of the defendant and the expert of the Court may be produced and give testimony. In such a case, the Court's experts and the defendant's experts both agree that the subject is a person who can be tested appropriately and the testimony of each should be admitted, even though it might disagree on the ultimate issue. If, on the other hand, the Court's expert believes that it cannot be determined whether or not the subject is telling the truth, the opinion of both experts should be rejected. This result could be caused by the defendant's failure to cooperate with the Court's appointed expert or because the defendant is not a person who can be tested. In either event, doubt is cast upon the validity of the testimony offered by the defendant, and it should be rejected.

The use of the Court appointed expert, whether or not he agrees with the expert tendered by the defendant, is a practical solution to the problem presented by the fact that only minimal standards exist for polygraph experts. It will in most cases permit the jury to hear the evidence.

### SELF INCRIMINATION

If the polygraph results are to be offered against the defendant, either if the Court's witness disagrees with the expert tendered by the defendant or if polygraph experts are offered independently by the government, the privilege against self incrimination needs to be examined.

The privilege can be waived, Hanson v. United States, 186 F.2d 61 (8 Cir., 1951). When a defendant testifies, he waives the privilege, Brown v. United States, 356 U.S. 148, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958); Johnson v. United States, 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704 (1943); Raffel v. United States, 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054 (1926).

A test cannot be made without the full cooperation of the defendant. It seems clear, then, that if adequate warnings are given as to the possible use of the tests, Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), the taking of the test itself is a waiver of the privilege.

Finally it can be argued that the privilege is not really involved at all. A person may be required to put on a blouse for identification, Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910)—give blood to determine alcohol content, Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)—participate in a line up, United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); Lewis v. United States, 127 U.S.App.D.C. 269, 382 F.2d 817 (1967)—give exemplars, Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967)—produce fingerprints, Woods v. United States, 397 F.2d 156 (9 Cir., 1968); Lewis v. United States, 382 F.2d 817, 127 U.S.App.D.C. 269, (1967); Kennedy v. United States, 122 U.S.App.D.C. 291, 353 F.2d 462 (1965). The thrust of the opinions is that coercion to obtain a statement is the heart of the privilege. Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910); Early v. Tinsley, 286 F.2d 1 (10 Cir.), cert. denied 365 U.S. 830, 81 S.Ct. 717, 5 L.Ed.2d 708 (1960); United States v. Townsend, 151 F.Supp. 378 (D.C.1957); United States v. Nesmith, 121 F.Supp. 758 (D.C.1954).

With the polygraph, there can be no coercion at the time the test is

taken if it is to be a valid test. The evidence offered is the opinion of the expert that the witness is or is not telling the truth when he voluntarily makes a statement. It is another way of supporting or attacking credibility. It is not a violation of the privilege against self incrimination.

## THE TRIAL PROCESS

The trial process very likely will be substantially affected in a number of respects by the use of polygraph opinion in Courts.

It seems likely that fewer cases will reach trial once the use of the polygraph is fully developed by the prosecution and the defense. The validity of polygraph opinions is clearly established and when a method has been developed to assure the check on the defendant's clearance by the examiners, it is likely that more cases will be dismissed. In the same way, when procedures have been opened to permit government use of the polygraph opinion under the checks suggested herein, it appears that the probability of pleas will be increased. In either case, the result is likely to be a benefit both to the innocent and society and will eliminate many cases from the Courts.

The argument that the jury will be displaced by a machine or by a polygraph examiner lacks merit. The jury will make the final determination of guilt or innocence. In this connection it is important to understand how different juries are today than they were when the restrictive rules of evidence were first developed. On the whole they read widely. Largely because of television they know generally what is going on in the world. Their educational background is extensive. They think. They reason. They are really very good at sorting out good evidence from bad, of separating the credible witness from the incredible, and of disregarding experts who attempt to inject their opinions into areas of which they have little knowledge. They would welcome all evidence having a bearing on the problem they are deciding and the give and take of deliberation would expose weaknesses in any witness or evidence. A modern jury, that must deliberate, and must agree, is the ideal body to evaluate opinions of this kind. The search for truth should be enhanced, eliminating some cases in which both sides agree there is no real issue, and in other cases assisting the jury to reach a just result.

 In this case in which the question of the truthfulness of the defendant is directly involved, the polygraph opinion would indicate the truthfulness of the defendant when he says he did not do the act or the truthfulness of the statement made at the Grand Jury proceedings, the basis for the charge. It does not stretch the law at all to hold that the opinion of a polygraph examiner that the defendant is telling the truth on these points is evidence of a trait of character to establish the fact that he did not do the act or did not lie before the Grand Jury, Proposed Rules of Evidence for U. S. District Courts, Rule 404.

 Since this is a perjury case, the issue is—was the defendant lying? The opinion of the polygraph examiner based on a properly conducted examination is more than character evidence, it is direct evidence on this point and may be offered by either side regardless of whether the accused takes the stand or puts his character in issue.

In other cases in which the question of the truthfulness of the defendant is less directly involved, e. g. murder, the defendant and the government would be more limited in the use of the opinion. Only if the defendant puts his character in issue or if he took the stand would the use of the testimony be permitted by the government in such cases, Proposed Rules of Evidence for U. S. District Courts, Rule 404, and the defendant could use this testimony only if his character as to truthfulness was attacked in any way, Proposed Rules of Evidence for U. S. District Courts, Rule 608. This result comes about without altering any of the well established rules.

## HEARSAY

The hearsay problem must be put in context. The questions of the examiner and the answers of the subject are not received in evidence to prove the truth of the fact asserted. They have value and will be received as evidence of the stimulus for the response of the autonomic nervous system of the subject that is being interpreted by the expert, and to identify the opinion with a statement or act otherwise made or done by the subject. The testimony to be admitted is the opinion of the expert that the subject is or is not telling the truth. The expert may base his opinion on matters which are " . . . reasonably relied upon by experts in the particular field." It is clear that a well conducted polygraph examination, including the questions, answers and the recorded responses, is the stuff on which polygraph experts rely. In one sense, the expert is stating his opinion on what he sees, what he hears and what he knows are the psychological responses of the body to statements that are truthful or not truthful. In this sense, he is like a physician who examines a patient and is permitted to express his opinion on the physiological condition of the patient. This has nothing to do with hearsay.

In another sense, he must report to the jury the statements made by the subject so as to make his opinion relevant to the issue in the case, and as a result of his expertise and the tests conducted he must indicate his opinion of the truthfulness of the statement. In this sense the statements supported by the opinion of the expert appear to be hearsay but since the very purpose of the test is to determine truthfulness, the evidence should be admitted as an exception to the hearsay rule because of its high degree of trustworthiness, Proposed Rules of Evidence for the U. S. District Courts, Rule 803(24). Either way the opinion of the expert is not subject to objection, Proposed Rules of Evidence for the U. S. District Courts, Rule 703.

## CONCLUSION

The evidence of polygraph experts pertaining to the polygraph examination of the defendant and their opinions will be admitted subject to the following terms and conditions:

1. The parties will meet and will recommend to the Court three competent polygraph experts other than those offered by the defendant.

2. The Court will appoint one or more of the experts to conduct a polygraph examination.

3. The defendant will submit himself for such examination at an appointed time.

4. The expert appointed by the Court will conduct the examination and report the results to the Court and to the counsel for both the defendant and the government.

5. If the results show, in the opinion of the expert, either that the defendant was telling the truth or that he was not telling the truth on the issues directly involved in this case, the testimony of the defendant's experts and the Court's expert will be admitted.

6. If the tests indicate that the examiner cannot determine whether the defendant is or is not telling the truth, none of the polygraph evidence will be admitted.

In the event the defendant declines to participate or cooperate in the test, none of the polygraph evidence will be admitted.