PEOPLE v LEVELSTON

1. CRIMINAL LAW—EVIDENCE—POLYGRAPH EXAMINATIONS.

The results of a polygraph examination are not admissible in evidence in a criminal case.

2. CRIMINAL LAW—EVIDENCE—POLYGRAPH EXAMINATIONS.

A large body of state and Federal case authority retains the traditional view that polygraph examination results are not admissible in evidence, and rulings which have held to the contrary have not been followed.

Appeal from Muskegon, James F. Schoener, J. Submitted Division 3 June 5, 1974, at Grand Rapids. (Docket No. 18532.) Decided July 24, 1974.

Rodell Levelston was charged with first-degree murder. Upon motion by defendant, the court ordered the admission of results of a polygraph examination of defendant. The people appeal the interlocutory order by leave granted. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Richard J. Pasarela,* Prosecuting Attorney, and *Neil G. Mullally,* Assistant Prosecuting Attorney, for the people.

*Marcus, Halbower, Ruck & Flynn,* for defendant.

Before: HOLBROOK, P. J., and T. M. BURNS and R. L. SMITH,* JJ.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 29 Am Jur 2d, Evidence § 831.

Physiological or psychological truth and deception tests. 23 ALR2d 1306.

* Former circuit judge, sitting on the Court of Appeals by Assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

HOLBROOK, P. J. The defendant was arrested and charged with first-degree murder, arising out of a homicide which occurred in Muskegon County on July 14, 1973. On October 5, 1973, the defendant's attorney filed a motion for the admission at trial of evidence concerning a polygraph examination of the defendant and a res gestae witness. At the hearing the trial court heard the testimony of one witness who testified as to the general operation and reliability of polygraph tests. The operator who conducted the examinations did not testify. The people opposed the motion.

On October 15, 1973, the trial court ruled that the results of the polygraph examination of the defendant would be admissible at trial, but that the examination of the witness would not be admissible. An order in accord with that ruling was filed on October 16, 1973. The people have by leave of this Court appealed that interlocutory order.

We are now presented with a single question raised by appellant: Are the results of a polygraph or lie-detector examination admissible in evidence in a criminal case?

·At the present time polygraph tests are inadmissible in Michigan. *People v Davis,* 343 Mich 348; 72 NW2d 269 (1955). This holding has been restated by and reaffirmed in numerous cases both in this Court and in the Supreme Court. The ruling in the case of *People v Becker,* 300 Mich 562; 2 NW2d 503 (1942), left the door open for further evaluations of its holding. The Court indicated that such evidence might be admissible when it can be demonstrated that such tests are accurate and have obtained general scientific acceptance and standardization. Such demonstra-

tions must establish that "reasonable certainty follows from such tests".

In some states such evidence is admissible on stipulation of counsel. *(People v Parisie,* 5 Ill App 3d 1009; 287 NE2d 310 [1972]; and *State v Ross,* 7 Wash App 62; 497 P2d 1343 [1972].) However, in Michigan "whether by voluntary agreement, court direction, or coercion, the results of such tests do not attain the stature of competent evidence". *Stone v Earp,* 331 Mich 606, 611; 50 NW2d 172, 174 (1951). The most recent statement of the Michigan Supreme Court on the subject is found in the case of *People v Frechette,* 380 Mich 64, 68; 155 NW2d 830, 832 (1968), wherein it is stated: "There can be no doubt at present that in this jurisdiction the results of lie-detector tests are inadmissible". See, also, *People v Tyrer,* 385 Mich 484; 189 NW2d 226 (1971).

Recent 1972 cases from other jurisdictions indicate that such evidence is not admissible in any jurisdiction. Such evidence was rejected in a leading Federal Court opinion in the case of *Frye v United States,* 54 US App DC 46; 293 F 1013 (1923), which has been followed by other Federal Courts to the present time.

Appellant points out that in theory, evaluation of polygraph examinations is subjective, and is affected by many factors—physical and psychological. The expert in this case testified that "even at the highest level of proficiency, polygraph examinations have a ten percent error factor". For further enlightenment on the subject see Radek, *The Admissibility of Polygraph Results in Criminal Trials: A Case for the Status Quo,* 3 Loyola Univ of Chicago L J 289 (1972).

Appellee does not quarrel with the cases cited by appellant, but asserts that the time has come

when polygraph tests are sufficiently accurate to be received in evidence. In support of this conclusion appellee relies on the opinion of a text writer, Professor Fred Inbau, who says in his book printed in 1966[1] that polygraph examinations have obtained enough scientific acceptability to be admissible. Although we accord Professor Inbau utmost sincerity and belief in his conclusion, we cannot accept his position when we weigh it against the rejection of his premise by the overwhelming opinions of courts which have treated this question since 1966 when his book was printed.

Appellee also relies on two recently decided cases by lower Federal Courts. These are *United States v Ridling,* 350 F Supp 90 (ED Mich, 1972) and *United States v Zeiger,* 350 F Supp 685 (D DC, 1972). On the basis of these opinions appellee asserts that polygraph examinations now have general acceptance. These two isolated trial decisions are at odds with the large body of Federal case authority within the Federal Court system. *Zeiger* was reversed by peremptory order by the U. S. Court of Appeals, District of Columbia, 155 US App DC 11; 475 F2d 1280 (1972). *Ridling* apparently was not appealed. However, in the case of *United States v Frogge,* 476 F2d 969, 970 (CA 5, 1973), on April 11, 1973, it was stated as follows:

"We are similarly unconvinced by the argument that the trial court erred when it refused to authorize the polygraph examinations requested by the appellants. Though a trend may be emerging towards loosening the restrictions on polygraph evidence, see *e.g., People v Houser,* 85 Cal App 2d 686; 193 P2d 737 (1948), the rule is well established in federal criminal cases that the results of lie detector tests are inadmissible. *United*

---

[1] Reid and Inbau, *Truth and Deception* (Williams & Wilkins, 1966), p 257.

*States v Rodgers,* 419 F2d 1315, 1319 (CA 10, 1969); *Frye v United States,* 54 App DC 46; 293 F 1013 (1923). Nothing in *United States v Ridling,* 350 F Supp 90 (ED Mich, 1972), heavily relied upon by the appellants, persuades us to abandon the traditional view."

Other recent cases retain the traditional view. *State v McDavitt,* 62 NJ 36; 297 A2d 849 (1972) (which relies on *Ridling* and concludes that results may be admitted on stipulation only); *In re Buckley,* 107 Cal Rptr 639 (Cal App, 1973) (evidence admissible at extradition hearing on stipulation); *Romero v State,* 493 SW2d 206 (Tex Crim App, 1973); *United States v Urquidez,* 356 F Supp 1363 (DC Cal 1973); *United States v Sockel,* 478 F2d 1134 (CA 8, 1973); *State v Curtis,* 281 So 2d 514 (Fla App, 1973); *State v Jones,* 281 So 2d 220 (Fla App, 1973); *People v McCain,* 42 AD2d 866; 347 NYS2d 72 (1973); *United States v Wilson,* 361 F Supp 510 (D Md, 1973); and *State v Towns,* 35 Ohio App 2d 237; 301 NE2d 700 (1973). See, also, *Sponick v Detroit Police Dept,* 49 Mich App 162; 211 NW2d 674 (1973); *People v Allen,* 49 Mich App 148; 211 NW2d 533 (1973); and *People v Lawson,* 48 Mich App 662; 211 NW2d 96 (1973). All available authorities with the single exception of *Ridling* assert that admission of results of polygraph tests is a theory whose time has not yet come.

Reversed and remanded for further proceedings not inconsistent with this opinion.

All concurred.