STATE of Iowa, Appellee,

v.

Atwell Junior CONNER, Appellant.

No. 57552.

Supreme Court of Iowa.

April 14, 1976.

Jon M. Kinnamon and Jerald W. Kinnamon, Cedar Rapids, and Michael W. Fay, Springville, for appellant.

Richard C. Turner, Atty. Gen., Thomas Mann, Jr., Asst. Atty. Gen., and David M. Remley, County Atty., for appellee.

Heard by MOORE, C. J., and LeGRAND, UHLENHOPP, HARRIS and McCORMICK, JJ.

McCORMICK, Justice.

Defendant appeals his conviction and sentence for first-degree murder. He was tried and found guilty by a jury upon an indictment charging him with murdering Maureen Ann Connolly in Jones County on March 10, 1974. We affirm the trial court because we find no merit in defendant's eighteen assignments of error.

The issues in this appeal can best be understood against the background of a summary of the State's evidence. That evidence tended to show that in the evening of March 8, 1974, defendant Atwell Junior Conner discussed the possibility of committing a robbery with two friends, George Nowlin and Steve Martin. The trio spent that night in the Cedar Rapids apartment of Mabel Beltz, Nowlin's girlfriend. The next morning they went to defendant's home in a rural area near Cedar Rapids where they picked up a single-shot 20 gauge shotgun. They took the gun back to the Beltz apartment, and Nowlin sawed off the gun barrel. They later test-fired the gun, which they called "short-shortie".

After an afternoon and evening of drinking and playing pool, defendant ended up with Nowlin at about 10:30 p. m. in Nowlin's car. Martin was not with them. Nowlin had told Beltz he was going to commit a robbery. He had two loaded shotguns in the car, a five-shot pump 20 gauge shotgun and "short-shortie". Defendant had agreed he would use one of the guns if necessary. Near midnight they were proceeding south on highway 218 in Cedar Rapids.

As they neared the intersection of the highway with Thirty-third Avenue, they saw a boy and girl walking north on the east side of the highway. The youths were Michael Servey and Maureen Ann Connolly, teenagers whose car had run out of gas nearby. Nowlin decided to rob the young couple.

Nowlin turned his vehicle around at the intersection and headed north. He told defendant to get in the back seat and handed "short-shortie" to him. They pulled alongside the couple. Nowlin ordered Maureen into the passenger side of the front seat and Michael into the left side of the back seat at the point of the pump shotgun. Defendant held the other shotgun on Michael after he entered the car. Nowlin demanded Michael's money. Michael gave his money to defendant who reached forward and put it in Nowlin's shirt pocket.

Nowlin continued driving north on highway 218 and later turned onto highway 30 and headed east toward Mount Vernon. In Mount Vernon, he turned north on highway 1. At about 1:00 a. m. on March 10 they arrived at a point in rural Jones County on a gravel road near Old Morley Bridge. There Nowlin stopped the car and ordered Maureen to get out with him. Defendant remained in the car with Michael. Nowlin raped Maureen near the car. She attempt-

ed to run away, but Nowlin fired his pump shotgun at her, fatally wounding her with two shotgun blasts. He left her body in the ditch by the bridge and got back in the car.

He ordered defendant to drive the car. At Nowlin's direction defendant drove the vehicle to Palisades Park in Linn County where Nowlin, after locking "short-shortie" in the glove compartment, got out of the car with Michael. He struck Michael with the pump shotgun and then shot and killed him. He left Michael's body there.

Nowlin and defendant returned to the Beltz apartment in Cedar Rapids, arriving there at some time between 2:00 a. m. and 3:00 a. m. Nowlin had blood on his clothing. He told Beltz he had killed the two teenagers. He later threatened Beltz, Martin and defendant with a similar fate if they should tell the police.

At about 9:00 a. m. Nowlin, Martin and defendant went back to the place Michael had been killed. Defendant drove the car. At the scene of the killing, Nowlin retrieved a piece of the pump shotgun which had fallen off when he struck Michael with it. Defendant remained in the car while Nowlin and Martin removed Michael's billfold from his body. Later Nowlin took 15 cents from the billfold and then threw it in the river. They returned to the Beltz residence and defendant went home.

The following Sunday, March 17, Nowlin, accompanied by defendant and defendant's wife and six children, took the pump shotgun and threw it in the river.

Maureen's body was found in the afternoon of March 16. Medical examination confirmed that she had been raped and died of shotgun wounds. Michael's body was found on March 17.

Martin went to the police on March 18 and reported what he knew of the events surrounding the killings. At about 4:00 a. m. on March 19 officers went to defendant's home and asked defendant to come to the Cedar Rapids police station with them for questioning. Defendant accompanied the officers to the station where he was interrogated about the killings for about one and

one-half hours. During that time he orally admitted his participation in the events leading to the deaths of Michael and Maureen, although after receiving advice of counsel he refused to sign a written statement. He was charged with the murder and rape of Maureen in Jones County and the murder and robbery of Michael in Linn County.

He was tried for the murder of Maureen, and this appeal follows his conviction of that offense.

Five of defendant's assignments of error in this appeal challenge pretrial rulings of the court, twelve of them challenge rulings during trial, and one challenges the court's ruling on defendant's motion for new trial.

## PRETRIAL RULINGS

I. *Defendant's motion for bill of particulars.* Before entry of a plea to the indictment, defendant filed a motion for bill of particulars pursuant to § 773.6, The Code. The indictment charged defendant with the murder of Maureen Ann Connolly on or about March 10, 1974, "in violation of Iowa Code Chapter 690." It was accompanied by fourteen pages of detailed minutes of evidence summarizing the substance of the testimony of State witnesses.

Defendant complained in his motion that the indictment lacked sufficient specificity because it did not charge him under a specific section of chapter 690. This left him in doubt, he alleged, whether he was being charged as an aider and abettor or principal and whether the felony-murder provisions of § 690.2 would be invoked against him. In resisting the motion, the State contended the indictment constituted an open charge of murder which the State could prove under any provision of chapter 690 which its evidence might support, including the felony-murder provisions of § 690.2, based on the alleged robbery and rape which preceded the homicides. The State argued it should not be required to elect in what manner the charge would be proved and insisted the indictment and minutes of testimony adequately informed defendant of the particulars of the offense.

The trial court overruled defendant's motion, and defendant assigns this ruling as error.

Insofar as relevant here, § 773.6 provides:

"1. When an indictment charges an offense in accordance with the provisions of section 773.4, but such indictment together with the minutes of the evidence filed therewith fails to inform the defendant of the particulars of the offense sufficiently to enable him to prepare his defense, or to give him such information as he is entitled to under the constitution of this state, the court may, of its own motion, and shall, at the request of the defendant, order the county attorney to furnish a bill of particulars containing such information as may be necessary for these purposes, or the county attorney may of his own motion furnish such bill of particulars.

"2. When the court deems it to be in the interest of justice that facts not set out in the indictment or in the minutes of the evidence or in any previous bill of particulars, should be furnished to the defendant, it may order the county attorney to furnish a bill of particulars containing such facts. In determining whether such facts and, if so, what facts, should be so furnished the court shall consider the whole record of the case and the entire course of the proceedings against the defendant."

■■■ We discussed principles applicable to motions for bill of particulars in *State v. Lass,* 228 N.W.2d 758, 764–765 (Iowa 1975). Summarized they include:

(1) A bill of particulars is in legal effect a more specific statement of the details of the offense charged.

(2) Its purpose is to give the defendant information which the indictment (or information) and minutes of testimony by reason of their generality do not give.

(3) It should be allowed when the court, in its discretion, finds the charge and minutes do not inform the defendant of the specific acts of which he is accused.

(4) A motion for bill of particulars cannot be used merely as a device to obtain the State's evidence or theory of the case or unessential allegations.

■■■ In the present case the minutes of testimony were unusually detailed. They included much of the previously summarized State's evidence. Although defendant maintains the indictment and minutes did not inform him what charge he had to defend against, we believe they clearly did so. The indictment accused him of murdering Maureen Ann Connolly on March 10, 1974, in Jones County. The minutes showed the State would rely on evidence that defendant was involved in a robbery of Michael Servey and rape of Maureen prior to Nowlin's killing of the youths. The minutes indicated these events occurred during a continuous transaction. They tended to support the charge on alternative grounds, including the felony-murder provisions of § 690.2 and an aiding and abetting theory. They revealed the State did not claim defendant actually shot Maureen. They fully informed defendant of the specific conduct of which he was accused.

In resisting the motion for bill of particulars the State made it clear it was relying on alternative theories under the evidence and did not wish to be put to an election of a single theory before trial. Defendant was told exactly what the State contended he did which amounted to murder. The fact such conduct might establish his guilt of murder under more than one theory did not make the accusation less specific.

Defense counsel sought to use a motion for bill of particulars as a device to narrow the State's theory of the case rather than to obtain information regarding the specific acts with which defendant was charged. The defendant was given ample information regarding the specific acts with which he was charged. The trial court did not err in overruling his motion for bill of particulars.

II. *Defendant's motion to suppress evidence of his oral statements.* Defendant contends the trial court erred in overruling his motion to suppress evidence of the oral

statements he allegedly made during custodial interrogation. He alleges the State failed to prove the voluntariness of the statements by a preponderance of the evidence.

After hearing, the trial court found the State had established the voluntariness of defendant's statements by a preponderance of the evidence and overruled the motion to suppress them.

Since this assignment of error presents a constitutional issue, we make an independent evaluation of the totality of evidence from which the assertion of unconstitutionality arises. The evidence relevant to that issue is reviewed de novo. *State v. Boren,* 224 N.W.2d 14, 15 (Iowa 1974), cert. denied, 422 U.S. 1008, 95 S.Ct. 2630, 45 L.Ed.2d 671 (1975). We must determine whether the State did, as the trial court found, establish by a preponderance of evidence that defendant's statements to the officers were freely and voluntarily made. *State v. Fetters,* 202 N.W.2d 84, 88 (Iowa 1972).

In challenging the trial court's ruling, defendant relies on various examples of what he alleges were improper psychological influences and inducements employed during the interrogation. He also relies heavily on evidence of his mental subnormality.

Issues of credibility of the testimony of three peace officers and of defendant inhere in defendant's claim of improper psychological influences and inducements. Defendant sought to portray himself as the victim of subtle but overbearing police conduct from the moment he was awakened at his home until the end of the interrogation at the police station. He said he did not know his rights, they were not fully explained to him, and he did not understand such explanations as were given. He said he was frightened and deceived into believing that if he told the officers what he knew he would be permitted to go home. He also claims he was threatened with a possible federal weapons charge, was confused by the manner of questioning, and, in effect, was overwhelmed by the police-dominated atmosphere.

The interrogating officers were Dennis Blome, a captain in the sheriff's office, Francis Engrav, a Cedar Rapids police detective, and Michael K. Elliott, a BCI agent. Blome and Engrav had previously been involved in investigation of the killings and were the officers who brought defendant to the police station.

The officers disputed defendant's version of events. Their testimony tended to show defendant's *Miranda* rights were fully and elaborately explained to him before the interrogation started. Elliott testified he thought Blome went "overboard" in making sure defendant understood his rights. The officers said defendant agreed to answer their questions, and, although he first disclaimed knowledge of the killings, changed his story and responded fully to their inquiry. Defendant suffers from a severe speech impediment which they acknowledged made it difficult to understand his answers. However, they said they had him repeat himself when necessary until they were sure they understood him. They denied threatening or frightening defendant and said their questioning was courteous.

■ We believe the officers' version of the interrogation is credible, and defendant's is not. Upon the entire record, we believe the interrogation was thorough, persistent and firm but conducted in a professional and fair manner in an atmosphere free of coercion and improper inducement.

Independent of this credibility issue is the problem of defendant's admitted mental subnormality. Psychological testing revealed defendant possessed an IQ of 72, bordering on retardation. He had about a sixth grade education but could not read or write. The psychological tests showed he had more difficulty understanding abstract concepts than 97 percent of the population would have.

Nevertheless, he could distinguish numbers, add and subtract and make change. He had held steady employment for seven years and supported his wife and six children. He owned an automobile and was apparently licensed to drive. He had dem-

onstrated his ability to function as a productive and self-sufficient member of the community.

Moreover, he had prior experience with police and had previously employed a lawyer. He was "street-wise".

In light of these factors, and accepting as we do the credibility of the officer's testimony that defendant's rights were carefully explained to him before the interrogation started and defendant acknowledged his understanding of those rights, we do not believe his mental subnormality was sufficient to impair his capacity for self-determination.

Mental subnormality does not in itself prevent statements from being voluntary unless it is sufficient to deprive the person involved of capacity to understand their meaning and effect. *State v. Fetters,* 202 N.W.2d 84, 89 (Iowa 1972). Defendant's handicap was much less severe. Deficiencies like his are simply part of the totality of circumstances which must be considered in determining the voluntariness issue.

The present case is not like *Cooper v. Griffin,* 455 F.2d 1142 (5 Cir. 1972), relied on by defendant. In that case the court held statements by 15 and 16 year-old mentally retarded boys were inadmissible. Their mental incapacity was greater than defendant's, and unlike defendant, they were completely unfamiliar with criminal process. This case is closer to *State v. Fetters,* supra, and *State v. Holderness,* 191 N.W.2d 642 (Iowa 1971), where statements of mentally deficient adults were found to be voluntary.

After review of the totality of circumstances, we find defendant's statements were the product of an essentially free and unconstrained choice. The trial court did not err in finding they were voluntary.

III. *Defendant's challenge to the standard of proof of voluntariness.* Defendant entreated the trial court to require the State to prove the voluntariness of his alleged statements by clear and convincing evidence rather than by a preponderance of evidence.

Under *Lego v. Twomey,* 404 U.S. 477, 489, 92 S.Ct. 619, 627, 30 L.Ed.2d 618, 627 (1972), voluntariness must be shown by at least a preponderance of evidence but states are free to adopt a higher standard. We adopted the preponderance of evidence standard in *State v. Fetters,* 202 N.W.2d 84, 88 (Iowa 1972), and have adhered to it since then. *State v. Swanson,* 228 N.W.2d 101, 105 (Iowa 1975); *State v. Cullison,* 227 N.W.2d 121, 127 (Iowa 1975); *State v. Winfrey,* 221 N.W.2d 269, 271 (Iowa 1974); *State v. Cooper,* 217 N.W.2d 589, 596 (Iowa 1974). We decline defendant's request that the more stringent clear and convincing evidence standard be substituted.

The trial court did not err in deciding the voluntariness of defendant's statements under the preponderance of the evidence standard.

## TRIAL RULINGS

IV. *The State's impeachment of defendant by use of a prior felony conviction.* By motion during trial defense counsel anticipatorily sought to bar the State's showing of a prior felony conviction to impeach defendant. The felony was a conviction of "larceny and burglary" in Missouri in 1968. Defendant contended he would be unfairly prejudiced by its use in evidence. He testified out of the jury's presence that the conviction was based on his taking a chainsaw and a piggy bank from an employer who refused to pay him wages which were due. The trial court overruled the motion, and the State showed the conviction.

In *State v. Martin,* 217 N.W.2d 536, 542 (Iowa 1974), we held a trial court has discretion to admit evidence of prior felony convictions to impeach a defendant when (1) the felony involved dishonesty or false statement and (2) the court determines any danger of unfair prejudice does not substantially outweigh the probative value of such prior felony conviction, taking into account such factors as (a) the nature of the conviction, (b) its bearing on veracity, (c) its age, and (d) its propensity to influence improperly the minds of the jurors.

Here defendant acknowledges his prior conviction was of a crime which usually reflects on a person's honesty and integrity. However, he points out it did not involve false swearing or perjury and was in fact simply a retributive act provoked by his employer's refusal to pay him. He argues these facts, together with the remoteness of the felony and the overriding sensitivity and importance of the credibility issue in this case, showed any relevancy of the conviction was far outweighed by the danger of unfair prejudice.

Felonies involving theft reflect on veracity. *State v. Miller,* 229 N.W.2d 762, 769 (Iowa 1975). Defendant's explanation of the offense, which he later repeated before the jury, might affect the weight the jury would accord the evidence on that issue but did not make it inadmissible. The same is true regarding the remoteness factor.

As in all cases in which a defendant testifies, defendant put his credibility in issue. His credibility could be tested under the standard applicable to all witnesses. *State v. Everett,* 157 N.W.2d 144, 147 (Iowa 1968). The trial court did not abuse its discretion in admitting evidence of his prior felony conviction.

V. *Admission of a photograph of the victim.* Defendant contends the trial court erred in admitting into evidence a photograph of Maureen Connolly's face taken after her death. When the State earlier offered this photograph and two others during the medical examiner's testimony, the court sustained defendant's objection to them on the ground of possible unfair prejudice.

Later, after a deputy sheriff testified to events surrounding discovery of Maureen's body including seeing blood on her face, defense counsel suggested during cross-examination that he testified in the preliminary hearing he had not observed blood on her face. On redirect examination, the State reoffered the photograph of Maureen's face to show blood was visible there as the officer maintained in his trial testi-mony. The trial court thereupon reversed its earlier ruling and admitted the exhibit.

A trial court has broad discretion in ruling on the admissibility of photographs of homicide victims. *State v. Hummell,* 228 N.W.2d 77, 83 (Iowa 1975), and citations. We do not find an abuse of trial court discretion in admitting the photograph.

VI. *Alleged prosecutor misconduct in questioning witness Martin.* The State's first witness was Steve Martin, the youth who had spent considerable time with Nowlin and defendant during the day which preceded the homicides. When questioning Martin, the prosecutor on several occasions failed in his questions to distinguish between what Nowlin and defendant did individually and what they did in concert. Each defense objection to such questions was sustained. After several of these incidents, defendant moved for mistrial and his motion was overruled.

Defendant contends the mere asking of such questions had the effect of encouraging the jury to believe Nowlin and defendant habitually acted in concert.

A motion for mistrial is addressed to the trial court's sound discretion, and we interfere only when that discretion has been abused. *State v. Wright,* 203 N.W.2d 247, 251 (Iowa 1972). We find no abuse of discretion here. The form of these few questions addressed to Martin at the beginning of this long trial was hardly of a nature to influence its outcome. This is especially true when the same matters were covered again, and clarified, on cross-examination of Martin and during the testimony of other witnesses.

The trial court did not err in overruling defendant's motion for mistrial on this ground.

VII. *Alleged prosecutor misconduct relating to defendant's unsigned statement.* The officers who interrogated defendant put their version of his oral statements into a written statement which defendant, without comment on its accuracy, refused to sign. During the hearing on defendant's pretrial motion to suppress, the

trial court told the State the statement was inadmissible as hearsay. Cf. *State v. Saltzman*, 241 Iowa 1373, 1377, 44 N.W.2d 24, 26 (1950).

BCI agent Elliott testified about the typing of the document and defendant's refusal to sign it after it was read to him. When asked if defendant "agreed or disagreed with it", the witness answered "No, sir". An objection after the answer was sustained, and the court told the jury to disregard the answer. Then the prosecutor asked, "Was a statement ultimately signed?". The trial court terminated the questioning and called counsel into chambers. The court admonished the prosecutor to avoid that line of questioning in light of the court's view regarding the statement's inadmissibility.

Defense counsel at that point moved for mistrial. The trial court found no prejudice had yet occurred and overruled the motion.

Defendant contends the court's ruling was error. The gist of Elliott's challenged testimony was that defendant neither affirmed nor denied the accuracy of the written statement in refusing to sign it. The court instructed the jury to disregard this testimony on its own motion following defendant's untimely objection. Defendant argues the jury might well have been led by the inquiry to believe defendant had no dispute with the accuracy of the statement. This argument assumes the jury would take more from the answer than was contained in it, and it assumes the jury would not follow the court's admonition. We do not accept either assumption. See *State v. Peterson*, 189 N.W.2d 891, 896 (Iowa 1971).

No abuse of discretion has been shown in the trial court's ruling.

VIII. *Alleged prosecutor misconduct in final argument.* Defendant testified at trial that the 20 gauge single-shot shotgun called "short-shortie" was owned by Nowlin. He said he had borrowed it but had returned it to Nowlin on the day before the homicides at Nowlin's request.

During the trial, without explanation, the State offered and the court received into evidence with defense concurrence a copy of a bankruptcy petition filed by defendant in 1973. The petition listed a 20 gauge shotgun among defendant's exempt assets. Evidence had been received in the pretrial suppression hearing that a 20 gauge shotgun had been taken from defendant's home the morning he was taken into custody. The State informed the court in the suppression hearing that it did not claim any connection between the shotgun removed from the home and the homicides.

Nevertheless, during the State's rebuttal argument one of the prosecutors twice suggested to the jury the bankruptcy petition could be taken as contradicting defendant's testimony denying ownership of "short-shortie". An objection by defendant to this argument was overruled.

Counsel may urge upon the jury reasonable inferences from the evidence introduced. He may draw conclusions and argue all permissible inferences which may reasonably flow from the record, but he may not create evidence by his argument. *State v. Phillips*, 226 N.W.2d 16, 19 (Iowa 1975).

In the present case, we do not believe the inference suggested by the prosecutor was reasonably supported by the record. As the prosecutor knew, the weapon listed in the bankruptcy petition may well have been the weapon taken from defendant's home which had no connection with the case.

The question is whether the prosecutor's impermissible argument so prejudiced defendant as to deny him a fair trial. *State v. Hansen*, 225 N.W.2d 343, 348–349 (Iowa 1975). Defendant argues his credibility was harmed by the argument. Although the problem is troublesome, we conclude the prosecutor's two unjustified brief attacks on defendant's denial of ownership of the shotgun in the context of a long and complex trial in which other issues were far more important were not sufficient to deny defendant a fair trial.

IX. *Exclusion of polygraph evidence.* After hearing, the trial court sustained a State motion in limine asking suppression

of polygraph evidence sought to be introduced by defendant. Defendant contends this ruling denied him the right to present a defense in violation of constitutional assurances of due process and compulsory process. He tendered the results of two polygraph examinations on the issue of his credibility. The witnesses would not be asked whether defendant was telling the truth but "whether there was evidence of deception on the polygraph chart when the defendant was answering critical questions". In the alternative, he offered to undergo an additional polygraph examination and stipulate with the State in advance to admit the result.

In an offer of proof defendant offered testimony of Carl S. Klump and Robert N. Meyn, two experienced polygraph examiners from Illinois who had administered polygraph examinations to defendant. After testifying regarding his background and after testifying to the reliability of the polygraph and describing its operation, witness Klump said he asked defendant four relevant questions to which, in his opinion, defendant gave truthful answers:

"(1) Did you shoot either Mike or Maureen? Answer: No.

(2) Were you holding a shotgun when George was outside the car with Maureen? Answer: No.

(3) Were you holding a shotgun when Mike and Maureen were in the car?' Answer: No.

(4) Did you talk to George about the both of you stealing something from somebody before you picked up Mike and Maureen? Answer: No."

Witness Meyn gave similar background testimony. Then he said defendant gave truthful answers to the five relevant questions asked by the witness during the course of a polygraph examination:

"(1) On March 10 did you at any time point a gun at Maureen Connolly or Michael Servey? Answer: No.

(2) On March 10 did you shoot Maureen Connolly with a gun? Answer: No.

(3) On March 10 did you shoot Michael Servey with a gun? Answer: No.

(4) On March 10 did you have sexual intercourse with Maureen Connolly? Answer: No.

(5) On March 10 did you plan with Nowlin to rob or kill the two victims? Answer: No."

Defendant also offered the testimony of Wallace LaPeters, chief of police in Cedar Rapids, in support of admissibility of polygraph evidence.

█ Following precedent from this court, the trial court sustained the motion in limine. This court has held on several occasions that polygraph evidence may be admitted into evidence only by stipulation of the parties. Unstipulated polygraph evidence may not be admitted. *State v. Maynard*, 232 N.W.2d 265 (Iowa 1975); *State v. Jones*, 193 N.W.2d 509, 512 (Iowa 1972); *State v. Galloway*, 167 N.W.2d 89, 95 (Iowa 1969); *State v. Freeland*, 255 Iowa 1334, 1339, 125 N.W.2d 825, 828 (1964).

Defendant contends the rule should be changed. This contention rests on three grounds. First, he asserts it denied him his right to compulsory process under the Sixth and Fourteenth Amendments of the United States Constitution and Article I, § 10, of the Iowa Constitution. Second, he asserts polygraph evidence has attained sufficient scientific acceptance to be admissible. Finally, he asserts the result of the rule is to permit the adversary to usurp the judicial function of determining the admissibility of evidence.

Regarding the first ground, defendant relies on *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), and *State v. Dorsey*, 87 N.M. 323, 532 P.2d 912 (1975), aff'd, 88 N.M. 184, 539 P.2d 204 (1975).

In *Washington v. Texas*, the Supreme Court held the Sixth Amendment right of an accused to have compulsory process for obtaining witnesses in his favor applies in state criminal trials under the due process clause of the Fourteenth Amendment. The court held that a Texas statute which disqualified an alleged accomplice from testi-

fying in behalf of a defendant infringed the right to compulsory process because it arbitrarily denied the defendant the right to the accomplice's testimony. In *Chambers v. Mississippi*, the Supreme Court held due process was violated by state rules of evidence which precluded a defendant from offering evidence bearing on another person's guilt of the offense charged. Chambers was denied the right to cross-examine that person regarding his repudiation of a sworn confession to the crime, and he was denied the right to introduce testimony showing oral confessions to the crime by that person. In *State v. Dorsey*, the New Mexico court applied the rationale of *Chambers v. Mississippi* in part to sustain the admissibility of unstipulated defense polygraph evidence.

 We are not persuaded that the holdings in *Washington v. Texas* and *Chambers v. Mississippi* dictate or support the result reached in New Mexico and advocated by defendant in this case. A defendant's due process right to present evidence in his defense in a state criminal trial does not override "established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers v. Mississippi*, 410 U.S. at 302, 93 S.Ct. at 1049, 35 L.Ed.2d at 313. To sustain defendant's constitutional attack on the trial court's ruling excluding defendant's proffered polygraph evidence, it would be necessary for us to determine that the rule excluding unstipulated polygraph evidence does not rest on considerations of fairness and reliability.

As our previously cited cases show, our rule rests on such considerations. Moreover, current holdings of most other courts are in agreement. Arguments for and against admissibility of unstipulated polygraph evidence and recent decisions of other courts are discussed in *United States v. Alexander*, 526 F.2d 161 (8 Cir. 1975). That court held:

"After careful review of the numerous materials presently available discussing polygraphy, we conclude that the results of unstipulated polygraph examinations should not be admissible in evidence at a criminal trial. While the polygraphic science and its instruments have advanced significantly * * *, we are still unable to conclude that there is sufficient scientific acceptability and reliability to warrant the admission of the results of such tests in evidence." *Id.* at 166.

We find no merit in defendant's contention that the trial court's ruling excluding unstipulated polygraph evidence denied him his constitutional rights to compulsory process and due process.

Defendant's second ground of attack on the trial court's ruling is related to the first in that it also involves the issue of reliability of polygraph evidence. Our determination of the first ground signals our determination of the second. Resolution of this issue is not controlled by the qualifications of the witnesses or the foundation for their testimony. Rather the problem relates to the appropriateness of polygraphic opinions as proper subject matter for expert testimony. As sciences or skills are developed, gain acceptance among those who would be expected to be familiar with them, and demonstrate their reliability, they are recognized as fields of proper opinion evidence subject matter. See *Dougherty v. Boyken*, 261 Iowa 602, 611, 155 N.W.2d 488, 493 (1968); *Nelson v. Nelson*, 249 Iowa 638, 87 N.W.2d 767 (1958).

The vast weight of state authority continues to hold either that polygraph evidence is inadmissible under any circumstances or admissible only upon stipulation. See, e. g., *State v. Seebold*, 111 Ariz. 423, 531 P.2d 1130 (1975) (by stipulation only); *Sullivan v. State*, 303 So.2d 632 (Fla.1974); *Smith v. State*, 20 Md.App. 577, 318 A.2d 568 (1974), cert. denied, 420 U.S. 909, 95 S.Ct. 828, 42 L.Ed.2d 839 (1975); *People v. Levelston*, 54 Mich.App. 477, 221 N.W.2d 235 (1974) (never admissible); *Harrison v. State*, 307 So.2d 557 (Miss.1975); *Warden, Nev. State Prison v. Lischko*, 523 P.2d 6 (Nev.1974); *State v. Jackson*, 287 N.C. 470, 215 S.E.2d 123 (1975); *Fulton v. State*, 541 P.2d 871 (Okl.Cr.1975) (never admissible); *Com. v. Brooks*, 454 Pa. 75, 309 A.2d 732

(1973); *State v. Woo*, 84 Wash.2d 472, 527 P.2d 271 (1974); *State v. Stanislawski*, 62 Wis.2d 730, 216 N.W.2d 8 (1974) (by stipulation only).

All federal courts of appeals which have addressed the issue have excluded unstipulated polygraph evidence. *United States v. Alexander*, supra, at 164, and citations.

Cases in which courts have departed from the traditional rule include: *United States v. Ridling*, 350 F.Supp. 90 (E.D.Mich.1972); *United States v. Zeiger*, 350 F.Supp. 685 (D.C.D.C.1972); rev'd w. o. opin. 156 U.S. App.D.C. 11, 475 F.2d 1280 (1972); *Commonwealth v. A Juvenile*, 313 N.E.2d 120 (Mass.1974); *State v. Dorsey*, supra; *Walther v. O'Connell*, 72 Misc.2d 316, 339 N.Y.S.2d 386 (1972) (civil case). See also *United States v. DeBetham*, 348 F.Supp. 1377 (S.D.Cal.1972), aff'd, 470 F.2d 1367 (9 Cir. 1972), cert. denied, 412 U.S. 907, 93 S.Ct. 2299, 36 L.Ed.2d 972 (1973). Courts which have held the evidence admissible have prescribed stringent, carefully-circumscribed conditions and limitations.

We recognize that substantial advances have been made in the science of polygraphy. These advances are reviewed in the cases which have held polygraph evidence admissible. Too, we are aware of the widespread use and reliance on the polygraph in government and commerce for investigative purposes. See 20 Drake L.Rev. 330, 343–347 (1971).

We are also cognizant of the fact the validity of the polygraph result depends on the qualifications, skill and integrity of the polygraph operator. The instrument by its nature is subject to abuse. We have vivid recollection of cases in which the polygraph has been used oppressively in custodial interrogation. See *State v. Franks*, 239 N.W.2d 588 (Iowa 1976); *State v. Cullison*, 227 N.W.2d 121 (Iowa 1975); *State v. Cullison*, 215 N.W.2d 309 (Iowa 1974). It has not been demonstrated that this field has been subjected to the standards, policing and discipline which are necessary in a science involving such pretentious and awesome subject matter.

Furthermore, the breadth, sensitivity and importance of the inference from polygraph evidence demands a higher standard of trustworthiness than is required of other kinds of scientific evidence. *United States v. Alexander*, supra, at 169–170; *Commonwealth v. Lykus*, 327 N.E.2d 671, 674–675 (Mass.1975). In a field where so much depends on subjective analysis by the machine operator and the outcome of trial may well turn on the polygrapher's opinion, we believe a strong showing of scientific acceptance and evidentiary reliability must be made. Despite the exceptional qualifications of the defense polygraphers in the present case, and the thoroughness of their examinations, we do not find the requisite showing to establish polygraphy as a field of proper opinion evidence subject matter was made here.

Defendant's third ground for challenging the trial court's ruling excluding the polygraph evidence is based on the alleged inequity of admitting stipulated evidence and excluding unstipulated evidence. This argument misconceives the basis for admitting the evidence pursuant to stipulation. When a party who otherwise has a right to object to the admissibility of evidence consents to the admission of the evidence, he gives up his right to object. This is the principle under which stipulated polygraph evidence is received. *State v. Galloway*, 167 N.W.2d 89, 94–95 (Iowa 1969); *State v. McNamara*, 252 Iowa 19, 27–29, 104 N.W.2d 568, 573–574 (1960).

An objection is a means of invoking a rule of evidence by which admission of proof at trial is regulated. *State v. Buckner*, 214 N.W.2d 164, 167 (Iowa 1974). In our adversary system, evidence received without objection is in the case for what it is worth. This is no less true when an objection is stipulated away than when it is otherwise given up. Contrary to defendant's argument, the issue of admissibility of polygraph evidence is no more in the hands of the adversary than is the issue of admissibility of any evidence to which an adversary may lodge a valid objection. We find no merit in this ground.

We refuse to depart from our rule excluding unstipulated polygraph evidence on any of the grounds urged by defendant. The trial court did not err in sustaining the State's motion to exclude the evidence.

X. *Admission of response to a hypothetical question.* Defendant testified he remained at the car pursuant to an order from Nowlin when Nowlin led Michael away and killed him. He testified, "I heard some moaning and seen some movement." He thought the killing occurred 30 or 40 yards from the car. In an apparent effort to impeach defendant's credibility regarding his observations, the State offered the testimony of a civil engineer who had measured various elevations at the scene. He was asked how tall a person standing on the roadway would have to be to see Michael standing at the place he was killed. Defense counsel objected to the question, alleging it assumed without basis that Michael was killed at the spot his body was found. The trial court overruled the objection, and the witness answered the question by saying, "Over ten feet tall, probably eleven feet with the height of the eyes." Defendant assigns the trial court's ruling as error.

■■■ A fact assumed in a hypothetical question must be such that the jury would have a right to find it established in the record. It need not be established by direct testimony but may arise as a fair inference from circumstantial evidence. *State v. Boner,* 203 N.W.2d 198, 200 (Iowa 1972). Here the circumstantial evidence supported a fair inference Michael's body had not been moved from the spot where he was killed. Although the jury may readily have rejected the inference, we cannot say the fact could not be assumed for purposes of the hypothetical question.

The trial court ruling was not an abuse of discretion.

XI. *The rulings on defendant's motions for directed verdict.* Defendant moved for a directed verdict at the conclusion of the State's evidence and at the conclusion of all the evidence on two grounds which are relevant here. First, he contended the indictment was insufficient to allege first-degree murder. Second, he contended the evidence was insufficient for application of the felony-murder rule under § 690.2, The Code. His motions were overruled, and he assigns those rulings as error.

■■■ Since reversible error cannot be predicated on the overruling of a motion for directed verdict at the conclusion of the State's case when the defendant later presents evidence, *State v. Valde,* 225 N.W.2d 313, 317 (Iowa 1975), error was preserved here only by the motion made at the conclusion of all the evidence.

■■■ As shown in our discussion in Division I, we find the indictment sufficient to allege first-degree murder. It accused defendant of the murder of Maureen Ann Connolly in violation of Chapter 690, The Code. Defendant's argument ignores § 773.29, The Code, which provides, "In an indictment for an offense which is divided into degrees it is sufficient to charge that the accused committed the offense." Murder is such an offense. Under Iowa law there is but one crime called murder. The degrees of the offense are but gradations of the same crime devised to permit punishment to be varied according to circumstances of greater or lesser enormity characterizing the act. *Rinehart v. State,* 234 N.W.2d 649, 654 (Iowa 1975).

■■■ We also reject defendant's contention the evidence was insufficient to support the State's theory that the robbery of Michael Servey was closely enough related to the subsequent killing of Maureen for application of the felony-murder provisions of § 690.2. The State's theory was that the homicide occurred as part of Nowlin's effort to conceal the preceding felonies of robbery and rape. We view the evidence in its light most favorable to the party against whom a motion for directed verdict is made. Ample evidence existed that defendant aided and abetted in the robbery. Sufficient evidence also existed that Nowlin killed Maureen to prevent her from reporting the robbery and rape. The jury could find that the killing took place as part of a continuous course of related criminal conduct.

■ A murder is in perpetration of a felony for purposes of the felony-murder provisions of § 690.2 if it results as an incident to the felony and is associated with the felony as one of its hazards. *State v. Burzette,* 208 Iowa 818, 829, 222 N.W. 394, 399 (1928). The circumstances in the present case are analogous to those in *Commonwealth v. Batley,* 436 Pa. 377, 260 A.2d 793 (1970), where the Pennsylvania court upheld a first-degree murder conviction under that state's similar felony-murder rule.

The trial court did not err in overruling defendant's motion for directed verdict made at the conclusion of the evidence.

■ XII. *The trial court's refusal to permit the defense to reopen for additional surrebuttal evidence.* The State offered rebuttal testimony of Samuel Zimmerman who said he observed defendant and Nowlin on a certain highway at about 3:30 a. m. on March 10. Defendant had testified to a different route of travel and had said he was at the Beltz apartment before that time. Zimmerman said defendant was a passenger in the vehicle and was wearing a baseball hat. Defendant testified in surrebuttal, denying he had been on the highway where Zimmerman said he saw him, denying he was on any highway at that time, and denying he wore a hat that night. Defense counsel then announced the defense had no further surrebuttal and rested.

Later, after the parties had taken their exceptions to the court's proposed instructions but before final arguments had been presented, the defense moved to reopen to present testimony of Mabel Beltz. Counsel did not know where she was and would need time to locate her. She had previously confirmed defendant's estimate of the time he and Nowlin arrived at her apartment, but the defense desired to have her testify whether defendant was wearing a hat when she saw him. It is impossible to tell from her earlier testimony whether she made sufficient observation of defendant to answer the question.

A trial court has discretion to deny a motion to reopen. *State v. Moreland,* 201 N.W.2d 713, 714 (Iowa 1972). Under the circumstances presented here, the trial court did not abuse its discretion in overruling the motion.

■ XIII. *The trial court's refusal to submit included offenses.* The trial court gave the jury only two alternatives: to find defendant guilty of first-degree murder or to acquit him. The court submitted the case on only one theory of guilt, the State's theory under the felony-murder provisions of § 690.2, The Code: that defendant participated in or aided and abetted Nowlin in the robbery of Michael Servey and that Maureen was murdered by Nowlin in perpetration of the robbery.

Defendant's only relevant exception to the court's failure to submit the included offense of second-degree murder was a contention the jury could not make a finding of guilt of first-degree murder because the indictment was insufficient to charge other than second-degree murder. We rejected that contention in Division I, supra.

Apart from this, we have often held the evidence must justify the submission of an included offense. *State v. Cox,* 196 N.W.2d 430, 433 (Iowa 1972); *State v. Grba,* 196 Iowa 241, 250–251, 194 N.W. 250, 254–255 (1923); *State v. Quan Sue,* 191 Iowa 144, 152, 179 N.W. 972, 975 ("If, in a given case, the evidence shows conclusively that the crime committed was murder in the first degree or nothing, the court is not required to submit the lower degree."). Under the only theory of murder submitted to the jury here, defendant could under the evidence only be found guilty of first-degree murder or acquitted. The court did not err in failing to submit second-degree murder.

■ XIV. *The reasonable doubt instruction.* The trial court defined reasonable doubt in an instruction conforming substantially to uniform bar instruction 501.11. Defendant excepted to the following language in the instruction:

"It must be such doubt as would cause a reasonable person to hesitate before acting in the more important affairs of life. But you should not ignore credible evidence to hunt for doubt, and you should not entertain such doubt as is purely

imaginary or based on groundless conjecture."

Defendant argued this language, in effect, requires a juror to apply an objective rather than subjective standard. He unsuccessfully sought substitution of the following language:

"It must be such doubt as would cause you to hesitate before acting in the more important affairs of life."

We believe a juror's reasonable doubt must conform to an objective standard. *State v. McGranahan,* 206 N.W.2d 88, 91–92 (Iowa 1973). We find no merit in defendant's contention to the contrary.

XV. *The element of aiding and abetting.* In paragraph 4 of the marshalling instruction, the trial court included the following as an element the State was required to prove beyond a reasonable doubt:

"4. That such action of George Nowlin was committed in the perpetration of a robbery of Michael Servey by defendant and George Nowlin, *in which robbery defendant either actively participated or knowingly aided and abetted George Nowlin.*" (Italics added).

Defendant excepted to the language italicized above and asked the court to substitute the following for it:

"in which robbery defendant voluntarily and with the intent to commit a crime affirmatively participated or knowingly aided and abetted George Nowlin."

Defendant contended the court's language inadequately defined aiding and abetting. The court overruled his exception and this ruling is assigned as error.

However, it was not the purpose of the marshalling instruction to define aiding and abetting. This concept was separately explained in a subsequent instruction, which was as follows:

"To 'aid and abet' means to assent to an act or to lend countenance or approval either by active participation in it or by some manner encouraging it prior to, or at the time of, its commission.

"The guilt of a person who knowingly aids and abets the commission of a crime

must be determined upon the facts which show the part he had in it, and does not depend upon the degree of another person's guilt.

"You are further instructed that defendant did not aid and abet George Nowlin in a robbery of Michael Servey if he withdrew from the robbery enterprise and communicated his intention to withdraw to George Nowlin before the actual robbery commenced.

"You are further instructed that the mere presence at the scene of the robbery is not in and of itself adequate evidence to prove that defendant actively participated in the robbery or aided and abetted George Nowlin in commission of the robbery."

Defendant contends the marshalling instruction should have apprised the jury that the actions of the defendant had to be affirmative and accompanied by an intent to commit a crime.

 Although it was necessary that the marshalling instruction include all elements of the offense, *State v. Watts,* 223 N.W.2d 234, 237 (Iowa 1974), it was not necessary for those elements to be defined in the same instruction. In ascertaining the sufficiency of definitions, instructions are construed together and not piecemeal. Furthermore, the trial court has the right to choose its own language to explain applicable legal principles. *State v. Robinette,* 216 N.W.2d 317, 318 (Iowa 1974).

We believe the court's aiding and abetting instruction adequately informed the jury of the necessity and nature of participation required to establish defendant's complicity in the robbery offense. See *State v. Buttolph,* 204 N.W.2d 824, 825 (Iowa 1972). When the aiding and abetting instruction is read as a whole and the marshalling instruction is read in light of the aiding and abetting instruction, we believe they adequately inform the jury it could not find defendant aided and abetted Nowlin unless he affirmatively encouraged or assisted Nowlin in the robbery.

 XVI. *The marshalling instruction.* Defendant contends the marshalling in-

struction should also have contained an explanation of the felony-murder concept referred to in paragraph 4 of that instruction and explained in a subsequent instruction. The explanatory instruction did not repeat the necessity that the State prove beyond a reasonable doubt that the murder occurred during perpetration of the robbery. Defendant urges this as additional error.

As we said in Division XV, supra, it is not essential that a marshalling instruction contain definitions or explanations of the elements which it lists. Similarly, when, as here, the marshalling instruction tells the jury all listed elements must be proved beyond a reasonable doubt, it is not necessary to repeat this principle in a separate instruction defining or explaining an element.

We find no merit in this assignment of error.

XVII. *Defendant's requested instructions on the felony-murder rule.* Defendant assigns as error the trial court's refusal to give two requested instructions on the felony-murder rule. The record shows these were not truly requested instructions. Rather, they were requests for changes in language made during exceptions to the court's proposed instructions. Thus this assignment of error actually addresses the court's overruling of those exceptions, not the refusal to give requested instructions.

The felony-murder rule in Iowa arises from the provisions of § 690.2, The Code, which provides in relevant part:

"All murder * * * which is committed in the perpetration or attempt to perpetrate any arson, rape, robbery, mayhem, or burglary, is murder in the first degree, * * *."

Unlike the common-law felony-murder rule, and statutes in most other jurisdictions, § 690.2 does not make all *killings* in perpetration of the designated felonies murder. It makes *murder* in perpetration of such felonies first-degree murder.

The court's proposed instruction explaining the felony-murder rule in this case was as follows:

"In connection with paragraph 4 of Instruction No. 11, you are instructed that such action of George Nowlin was committed in the perpetration of a robbery of Michael Servey only if the robbery of Michael Servey and the killing of Maureen Ann Connolly were parts of one continuous series of acts connected with each other."

In excepting to this instruction, defense counsel contended the explanation was inadequate and requested the jury be told:

"You are instructed that such action of George Nowlin was committed in the perpetration of a robbery of Michael Servey only if the death of Maureen. Ann Connolly occurred in the immediate perpetration, actual commission and immediate escape from the robbery of Michael Servey."

In the alternative, if this change were refused, defense counsel requested the jury be told defendant could be convicted only if Maureen's death occurred incident to the robbery of Michael "rather than arising from the formation of a separate and specific intent unrelated to the crime of robbery."

In overruling defendant's exceptions to the proposed instruction and in refusing to change its language as requested, the trial court cited *United States v. Naples,* 192 F.Supp. 23 (D.C.D.C.1961), reversed on other grounds, 113 U.S.App.D.C. 281, 307 F.2d 618 (1962), and *State v. Adams,* 339 Mo. 926, 98 S.W.2d 632 (1936).

The *Naples* case involved an issue regarding what constituted a murder committed in perpetration of a housebreaking under the District of Columbia Code. The Court held:

"The overwhelming weight of authority is to the effect that if the homicide is committed within what is referred to as the *res gestae* of the burglary or housebreaking, that is, in connection with it, the killing constitutes felony murder. It suffices if the burglary and the homicide are parts of one continuous series of acts connected with each other. This doctrine

applies if the burglary or housebreaking had been technically completed and the criminal is gathering his plunder and is preparing to make his departure when he kills his victim. This principle is extended to a situation where the defendant has left the premises, is endeavoring to make his escape, and kills someone while being pursued." 192 F.Supp. at 33.

The *Adams* case, quoted in *Naples,* includes a similar statement of the rule.

■ Like the majority of jurisdictions, we follow the principle of the *Naples* and *Adams* cases. Defendant's first exception to the court's instruction would have narrowed this principle as have a minority of jurisdictions. See Annot., 58 A.L.R.3d 851 et seq. As we observed in Division XI, supra, a murder is in perpetration of a felony in Iowa under § 690.2 if it results as an incident to the felony and is associated with the felony as one of its hazards. It is not necessary for application of the doctrine that the murder be contemporaneous with the felony or have the immediacy urged by defendant. A lapse of time and distance are factors to be considered but are not determinative. See *People v. Mason,* 54 Cal.2d 164, 4 Cal.Rptr. 841, 351 P.2d 1025 (1960) (lapse of 20 hours); *State v. Jackson,* 71 Mont. 421, 230 P. 370 (1924) (lapse of one and one-half hours, distance of 30 miles); *State v. Ryan,* 192 Wash. 160, 73 P.2d 735 (1937) (distance of 40 miles).

■ A murder which occurs as part of an unbroken chain of events to aid in escape or to conceal guilt of the felony is committed in perpetration of the felony. *State v. Engberg,* 376 S.W.2d 150 (Mo. 1964); *Commonwealth v. Batley,* 436 Pa. 377, 260 A.2d 793 (1970). We find no merit in defendant's first exception to the court's instruction explaining the felony-murder rule.

■ Defendant's second or alternative exception presents a closer question. Defendant alleges his alternative request would inform the jury of the State's obligation to prove the robbery and murder were causally and not merely sequentially related. That purpose is not entirely clear from

defendant's exception and the language requested. In any event, we believe the court's instruction substantially and adequately embodied the concept urged by defendant. At least it did so as well as the language suggested by defendant.

Although the court's instruction might well have been more detailed, we do not believe it was deficient in the respects claimed by defendant. The trial court did not err in overruling his exceptions.

## RULING ON MOTION FOR NEW TRIAL

■ XVIII. *Defendant's post-trial claim he was denied a fair trial.* In his motion for new trial, defendant contended that the cumulative effect of the errors he alleges occurred during his trial combined to deny him a fair trial in violation of the Sixth and Fourteenth Amendments of the United States Constitution. He assigns the trial court order overruling this motion as error.

Defendant was charged March 19, 1974, and indicted April 16, 1974. Extensive pretrial proceedings occurred before commencement of trial on June 25, 1974. The trial was relatively long and complex, terminating with a verdict of guilt on July 6, 1974. The case was aggressively prosecuted by the county attorney and an area prosecutor from the attorney general's office. It was aggressively defended by the three attorneys who have vigorously represented defendant in this appeal.

During hotly-contested pretrial and trial proceedings of this magnitude and this complexity, arguable questions are bound to arise regarding some of the many rulings a trial judge is required to make in the heat of trial. This is especially true when, as here, the defendant is represented by able and conscientious counsel who leave no stone unturned in a thorough, painstaking and diligent effort to represent their client.

We have been presented with a transcript of 1634 pages, an abstract of the record of 686 pages, and, with permission of the court, an appellant's brief of 266 pages raising and carefully briefing eighteen assignments of error.

As should be clear from this background and from our discussion of these assignments of error, defendant's motion for new trial was not frivolously based. Nevertheless, the issue which it raised and which this assignment of error raises is not whether defendant had a perfect trial but whether he had a fair trial. Upon the whole record, although several difficult and close questions are presented, we are satisfied he did.

The trial court did not err in overruling his motion for new trial.

We find no reversible error.

AFFIRMED.