# IN THE COURT OF APPEALS OF IOWA

No. 19-0362
Filed July 1, 2020

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**D'MARITHE CULBREATH,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Mary E. Howes, Judge.

The defendant appeals from his convictions for first-degree murder, first-degree robbery, and conspiracy to commit first-degree burglary. **AFFIRMED.**

G. Brian Weiler, Davenport, for appellant.

Thomas J. Miller, Attorney General, and Sheryl Soich, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., and May and Greer, JJ.

**GREER, Judge.**

After an eight-day trial, a jury convicted D'Marithe Culbreath of first-degree murder, first-degree robbery, and conspiracy to commit first-degree burglary. On appeal, Culbreath challenges the admission of one piece of evidence. He argues the district court abused its discretion in admitting a multiple-hour video of police interviewing him because, during the interview, a detective asked Culbreath if a codefendant thought Culbreath had guns and Culbreath replied, "Could." He maintains this was prior-bad-acts evidence that should have been kept out of trial.

In his pretrial motion in limine, Culbreath asked that the video of the interview not be played as it contained evidence of Culbreath's criminal history. At a hearing on the motion, the State agreed not to introduce the video through the testimony of the detective who conducted the interview. In other words, the State agreed not to introduce the video during its case-in-chief. No other ruling was made regarding the admissibility of the video exhibit.

At trial, the State did not introduce the video during its case-in-chief. Then, after the State rested its case, Culbreath chose to testify in his own defense. During his testimony, Culbreath admitted he was with the group of individuals who broke into the home of and killed Brady Tumlinson but claimed he became involved and participated unknowingly. He also testified about when he was interviewed by police approximately three weeks later. During direct examination, this exchange took place:

> Q. Now, when you were giving that interview that day, it was pretty long. The detectives were encouraging you to tell your own story so no one else would tell it; correct? A. Correct.
> Q. Were you ever promised immunity, or if you just tell us, you're going to be okay, or anything like that? A. They said that if

you tell us what you know, then things would be less—charges would be less—light on you, or something like that.

On cross-examination, the State questioned Culbreath further:

Q. So, Mr. Culbreath, your testimony today is that the officers told you during that interview with you that if you told them what happened that your charges would be lighter? A. They said things would not—something like that, but not necessarily that.
Q. What did they say? A. They said, like, "If you tell us what happened, then you"—like, "charges would not be as heavy as they is on you right now."

The State sought to introduce the video of the police interview to disprove Culbreath's claim of leniency. Culbreath at first objected but then withdrew his objection. After the video was admitted and played in part for the jury, Culbreath moved for mistrial, arguing he was unable to get a fair trial now that the jury heard the police ask Culbreath if others believed he had guns and Culbreath's answer of "Could."[1] The district court denied the motion for mistrial.[2]

To preserve his claim about improper prior-bad-acts evidence, Culbreath needed to object to the evidence when the State sought to have it admitted. "When a party who otherwise has a right to object to the admissibility of evidence consents to the admission of the evidence, he gives up his right to object." *State v. Conner*, 241 N.W.2d 447, 459 (Iowa 1976). While Culbreath objected to the evidence after it was shown to the jury, his objection came too late. "A party to a criminal proceeding . . . will not be permitted to allege an error in which he himself acquiesced, or which was committed or invited by him, or was the natural

---

[1] At the time, Culbreath's counsel suggested they were unaware that version of the video, which had been previously edited to comply with various court rulings, included that question and answer.
[2] Culbreath does not appeal that ruling.

consequence of his own actions." *State v. Sage*, 162 N.W.2d 502, 504 (Iowa 1968) (citation omitted); *see State v. Sharkey*, 311 N.W.2d 68, 71 (Iowa 1981) ("Objections to evidence must be raised at the earliest time the alleged ground becomes apparent.").

Because the claim Culbreath brings on appeal was not preserved for our review, we affirm.

**AFFIRMED.**