THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GERALD BUCKLEY, Defendant-Appellant.

Third District   No. 75-102

Opinion filed September 22, 1976.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (James E. Hinterlong, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

After a jury trial defendant, Gerald Buckley, was found guilty of the offense of indecent liberties. The circuit court of Peoria County sentenced him to a term of from 5 to 10 years to the Department of Corrections.

Separate indictments for rape and indecent liberties were returned

against the defendant on June 26, 1974, alleging that defendant had had sexual intercourse with 15-year-old Cheryl Lucas.

Ms. Lucas testified for the State at trial and stated that on May 26, 1974, she was hired to babysit for a Donna Chapin who resided at the Harrison Homes in Peoria, Illinois. Her testimony indicated that at approximately 1 a.m. Donna Chapin's brother-in-law, defendant Buckley, knocked on the door of the apartment and was admitted by Ms. Lucas. Cheryl Lucas testified that after a cigarette and a can of beer defendant grabbed her, threw her to the bed, tore off her blue jeans and committed an act of sexual intercourse with her. Defendant then fell asleep on the bed. At approximately 3 a.m. Donna Chapin returned to the apartment and took Cheryl Lucas home. The police were contacted after Ms. Lucas got home and she was removed to the hospital for examination. The examination at the hospital revealed the presence of sperm.

Larry Wight, a City of Peoria police officer, testified that at about 2 a.m. on May 26, 1974, he and his partner encountered a man, identified by Wight in court as the defendant, near a store across the street from the Harrison Homes. When asked to explain his presence by the store at that hour, the man stated he was from out of town and thought the store was open until 4 a.m.; that he had family in Havana; that he was going to his sister's apartment in the Harrison Homes, number 15; and that his sister's name was Donna Chapin. When asked whether he had driven to the place, the man said he had and pointed out a blue station wagon parked in front of the Harrison Homes. After the officer said he had no additional questions, the man walked towards the apartments.

Officer David Hoffman, one of the investigating officers, was called on behalf of the State. Officer Hoffman testified that on June 7, 1974, he had occasion to interrogate defendant Buckley at the Peoria Police Department. After advising defendant of his rights Hoffman began questioning Buckley about the rape charge then pending against him. After defendant had responded to some preliminary question, Hoffman testified that "he [defendant] at first became evasive and then refused to answer my questions and asked for an attorney * * * he [defendant] requested an attorney and stated he did not want to answer any more questions." Following cross and redirect examination of Officer Hoffman, the proceedings were terminated for the day.

The next morning at trial, October 9, 1974, defense counsel moved for a mistrial claiming that the testimony of Officer Hoffman regarding defendant's exercise of his Fifth Amendment privilege was highly prejudicial and constituted "irreparable error." Following arguments by respective counsel, the court discussed the problem at length citing various case law on the subject. The court concluded that his decision on whether or not to grant defendant's motion for a mistrial would be

reserved until a later time when the quality of the evidence in the case, taken as a totality, could be properly assessed.

Donna Chapin, sister of the defendant, was next called as a witness in behalf of the State. She testified that on the night in question she returned to her apartment at approximately 3:30 a.m. and met Cheryl Lucas, who was crying, at the door. She asked Ms. Lucas if she would like to be walked home, and having received an affirmative response, proceeded to walk her back to her apartment. During the walk, Ms. Lucas indicated to Ms. Chapin that defendant had raped her. After reaching the Lucas apartment, the police were called. Although subsequent testimony established the existence of a blood stain on the mattress of the Chapin bed, Ms. Chapin conceded she had no idea when the stain was placed there nor did she have any direct knowledge of any of the alleged events of the evening.

At the close of the State's case, following lengthy medical testimony, the defendant moved for a directed verdict claiming, in part, the prejudicial effect of the earlier testimony of Officer Hoffman. The motion for directed verdict at the close of the State's case in chief was denied.

The defendant's case rested upon an alibi defense. The first witness testifying on behalf of the defense was Donald Buckley, brother of the defendant. It was his testimony that on the night in question, May 26, 1974, he saw the defendant at approximately 1:30 a.m. at his home in Havana, Illinois, and subsequently witnessed the defendant leave the premises sometime between 1:45 and 2:45 a.m. To these events the witness indicated he was absolutely certain. The witness further testified that the time to travel between Havana and Peoria was approximately 45 minutes. In later evidence it developed that the witness had not actually seen the defendant and had not talked with the caller since he did not answer the door in response to the call at 1:30 a.m. According to the witness the caller must have been his brother. Additionally, it appeared that certain events which the witness had relied upon to determine the exact time of the visit had never occurred.

Defendant took the stand in his own behalf and stated that he had left his brother's house in Havana at approximately 2 a.m. and then proceeded to frequent several local restaurants and bars. Defendant testified he departed Havana at about 2:30 a.m. and then drove toward Peoria on his way to his sister's house. Prior to arriving at his sister's home, he stopped at a local supermarket hoping to pick up some beer. The market was closed and a passing police patrol stopped and asked him what he was doing there at that time of night. After routine questioning, he was released and continued to his sister's apartment. He arrived there sometime after 3:30 a.m. and discovered Cheryl Lucas sitting on the bed staring at the television set with the two little children laying on the floor

and the two older children, aged 10 and 11 still awake. Defendant scolded Cheryl Lucas for not putting the children to bed and proceeded to put them to bed himself. Approximately 20 minutes after the time of his arrival Donna Chapin returned home, noted that the babysitter had been recently crying and took her home. After dropping off a package as he had promised his sister, defendant left Peoria and returned to Aurora where he was subsequently arrested while at his job.

Defendant sought to corroborate his account of where he had been prior to visiting the Donna Chapin apartment. However, the several persons called were unable to corroborate the defendant's account and in some instances their testimony contradicted that of defendant's.

At the close of all the evidence, the defense submitted a motion for a directed verdict which was denied by the trial court. Thereafter, the court reopened arguments on the motion for mistrial based on Officer Hoffman's testimony, such ruling having been reserved until the close of all the evidence. Following arguments, the court specifically found that the evidence with regard to the rape was not "overwhelming" and therefore concluded a mistrial was required with regards to the rape offense.

Two issues are presented for our consideration. First, did the court err in limiting the mistrial to the rape count when the prosecution's evidence that attempted to prove rape and indecent liberties was the same and the defense was alibi? Second, did the court improperly and in violation of the defendant's rights coerce the jury into reaching a verdict by delivering a deadlock instruction when there was no indication that the jury was deadlocked?

We shall initially consider the second issue raised by the defendant. The jury retired for deliberations on the remaining charge of indecent liberties at 4:50 p.m. At 6 p.m., the jury was taken to dinner and returned at 7:05 p.m. At 10:45 p.m. the court, on its own motion, recalled the jury and asked whether the jury had been able to reach a verdict. Upon learning that they had not, the court delivered a deadlock instruction. (*People v. Prim*, 53 Ill. 2d 62, 289 N.E.2d 601.) At midnight, the jury returned a verdict of guilty against the defendant on the charge of indecent liberties. Defendant contends it was error to give the deadlock instruction when it did not appear the jury was deadlocked or that deliberations had continued for an unreasonable length of time.

■■ We believe it is unnecessary to consider the defendant's contention on its merits because no objection to the giving of the instruction was interposed at the time it was given by the trial court. Any error in instructions not objected to is deemed waived by such failure. (*People v. Daily*, 41 Ill. 2d 116, 242 N.E.2d 170, *c.f. People v. Jackson*, 26 Ill. App. 3d 618, 325 N.E.2d 450.) No claim was made that the error

referred to constitutes plain error and indeed we do not believe that such a claim could properly be made.

This brings us then to the question of whether the court erred in refusing to declare a mistrial on the indecent liberties charge. The general rule is that where an accused exercises his constitutional right against self-incrimination that fact shall not be subject to comment at trial. *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602; *United States v. Hale,* 422 U.S. 71, 45 L. Ed. 2d 99, 95 S. Ct. 2133; *People v. Rothe,* 358 Ill. 52, 192 N.E. 777. See also *Doyle v. Ohio,* ___ U.S. ___, 49 L. Ed. 91, 96 S. Ct. 2240.

As can be seen from the action of the court described earlier in this opinion, the trial court found error in Officer Hoffman's testimony regarding defendant's refusal to speak further. On this appeal counsel for the People concede that the officer's testimony was improper. Thus the only question is the effect of the error and more specifically whether the error requires reversal of the judgment and a new trial.

■■ In *Chapman v. California,* 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824, the Supreme Court established the standard which should be applied when deciding whether comment on defendant's exercise of his Fifth Amendment privilege amounts to reversible error. The Court held that in order for an error involving the denial of a Federal constitutional right to be held harmless in a State criminal case, the reviewing court must be satisfied beyond a reasonable doubt that the error did not contribute to defendant's conviction. Consideration must be given to the prejudicial effect the introduction of such testimony would have on defendant's trial. Where the evidence of guilt is otherwise "overwhelming," the error will be held to be harmless beyond a reasonable doubt. *United States v. Wick,* 416 F. 2d 61 (7th Cir. 1969); *People v. Gilyard,* 124 Ill. App. 2d 95, 260 N.E.2d 364, and *People v. Anthony,* 38 Ill. App. 3d 190, 347 N.E.2d 179.

■■ The main thrust of defendant's argument is that because both offenses, *i.e.,* rape and indecent liberties, were part of the same transaction and each was supported by the same evidence, it was inconsistent for the trial court to allow a mistrial on one charge and not the other. We do not agree with this argument. Concededly, the charge of rape required evidence of force and the absence of consent, elements not required by the offense of indecent liberties. While the offenses may have arisen from the same transaction, the offense of indecent liberties is a lesser included offense. Since the more serious offense, rape, requires different or additional evidence beyond that required to support the lesser included offense, such range of required evidence recognizes that evidence may support only the lesser included offense. In this regard the trial court might have found, depending on his view of the evidence, that even ignoring the officer's testimony the evidence was insufficient to

support the offense of rape. The trial court did not so find but such possibility demonstrates the appropriateness of viewing the evidence differently in respect to the different offenses charged. The rulings of the trial court although related can and should be considered independently. Therefore we find nothing inconsistent in the court's rulings merely because they are different.

■■ So far as the application of the *Chapman* rule is concerned we agree the evidence is such that it did not contribute to the jury's verdict to the prejudice of the defendant's right to a fair trial. The evidence is strong and convincing that sexual intercourse had taken place, that Cheryl Lucas has not attained the age of consent and that the defendant was the perpetrator of the offense. The fact that the jury deliberated for approximately four hours does not in our opinion require any different view of the evidence. So far as jury deliberations are concerned the reasons for the time involved are pure speculation. The time involved may well represent the intention of the jurors to be as conscientious as possible as for any other reason.

Finding no error in the judgment of the circuit court of Peoria County, the judgment of said court is affirmed.

Judgment affirmed.

STENGEL and BARRY, JJ., concur.