THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MALCOM WRIGHT, Defendant-Appellant.

Second District    No. 76-398

Opinion filed February 23, 1978.

Ralph Ruebner and Allen L. Wiederer, both of State Appellate Defender's Office, of Elgin, for appellant.

Daniel D. Doyle, State's Attorney, of Rockford (Phyllis J. Perko and Stephen M. Deitsch, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE WOODWARD delivered the opinion of the court:

Following a jury trial defendant, Malcom Wright, was found guilty of the murder of Marjorie Peterson, and was sentenced to serve 100 to 150 years imprisonment. He appeals.

Due to the particularly brutal circumstances of this crime, the opinion will focus only on those facts relevant to the contentions raised in this appeal.

The naked body of the victim was found in a bedroom of her apartment by two police officers, summoned to the premises by a concerned neighbor. The bedroom was in disarray with torn pieces of clothing scattered about. In the course of the investigation the police discovered two pieces of a check belonging to Michael Bonaquisti, on the stairs leading to the victim's apartment. Bonaquisti was taken into custody and questioned; he gave the police the names of Tommy Ring and the defendant, both of whom were subsequently arrested and charged with murder. Their cases, however, were severed for trial.

At defendant's trial, Bonaquisti testified that he, Ring and defendant had been drinking together during most of the afternoon of the day of the crime. At Ring's suggestion, all three left to go to the apartment of the victim; Ring knew her, once having lived in the apartment below hers. When the three men arrived at the building the victim came downstairs and asked what they wanted. Bonaquisti replied that he wanted to come upstairs; thereupon the victim ran upstairs. The three men followed, and at Ring's direction Bonaquisti kicked in the door to the victim's apartment. As they entered the victim was telephoning; Ring grabbed her, threw her to the floor, and began to strike her. According to Bonaquisti, he kept telling Ring and the defendant to leave the victim alone, but neither one would pay any attention to him. Bonaquisti ran out of the apartment, got into his car and drove home. Later that evening, Ring and the defendant appeared at Bonaquisti's home; defendant informed him, "That bitch is dead, I stabbed her." On cross-examination Bonaquisti admitted that he had not told the police about defendant's statement because he was frightened of the defendant. Defendant stated to the police that he was present in the victim's apartment and that after

Bonaquisti left he attempted to stop Ring from hurting the victim and that, failing to do so, he left the apartment and waited until Ring came downstairs. The defense also attempted to prove that defendant could not have formed the requisite intent to commit murder due to his state of intoxication.

■■ Defendant first contends on appeal that the trial court erred in admitting evidence of an altercation between the defendant and a deputy sheriff which occurred while defendant was being transported from a courtroom to the county jail. Defendant asserts that this was an unrelated incident that was not relevant to any issue in the case; that its prejudicial effect outweighed its probative value and therefore, should have been excluded. It is the State's position that the incident was an attempted escape which can be considered with other circumstances tending to prove guilt (*People v. Brown* (1963), 27 Ill. 2d 23, 187 N.E.2d 728, *cert. denied*, 374 U.S. 854, 10 L. Ed. 2d 1075, 83 S. Ct. 1923), and was therefore properly admitted.

Examination of the trial record reveals that sufficient facts were presented from which an attempted escape could be inferred, and we hold that the trial court here properly admitted the testimony. Nor do we find any basis in the record for defendant's assertion that the trial court believed it had no discretion in determining the admissibility of such evidence, as clearly, the trial court admitted the testimony as proof of an attempted escape and not as evidence of an unrelated crime.

Defendant's second contention is that the trial court erred in refusing to give defendant's Instruction No. 4 and Instruction No. 5. At the instructions conference, the following colloquy took place:

"THE COURT: * * * No. 4 and No. 5 are refused. They are not IPI Instructions, and I think it unnecessarily dwells on the problem of intoxication.

MR. BERRY [defense counsel]: I believe No. 4 and No. 5 repeat one of the instructions already given.

THE COURT: Yes, sir, No. 4 and No. 5 are refused. * * *"

■■ Any error in instructions, not objected to, is deemed waived by such failure. (*People v. Buckley* (1976), 41 Ill. App. 3d 989, 993, 355 N.E.2d 207, 210.) Also, the failure to object to proposed instructions generally operates as a waiver of any objection. (*People v. Wright* (1975), 32 Ill. App. 3d 736, 336 N.E.2d 18.) We are of the opinion that the same rule applies in this case since the defendant's attorney concurred in the trial court's ruling that the tendered instructions were repetitive.

■■ Even if we were to consider the defendant's contention on the merits, no error was committed by the refusal of those instructions. Defendant's Instruction No. 4 defined the word "knowledge" and No. 5 defined the word "intent." Where terms employed in an instruction are of

a general nature, such as these, and are not technical terms or words of art, they need not be defined in the absence of anything in the charge to obscure their meaning. *People v. Miner* (1977), 46 Ill. App. 3d 273, 360 N.E.2d 1141. See also *People v. Watson* (1974), 19 Ill. App. 3d 854, 312 N.E.2d 439.

Next, the defendant contends that the failure of the trial court to, sua sponte, instruct the jury on accomplice witness testimony, deprived him of a fair trial. No such instruction was tendered by the defendant. "Generally, a trial judge has no duty to give instructions on his own motion where the defendant does not request them [citations], and by failing to request certain instructions, a defendant generally waives the giving of such instructions. [Citations.]" *People v. Watson* (1974), 19 Ill. App. 3d 854, 855, 312 N.E.2d 439, 440.

While conceding that by not tendering such an instruction such a contention would be waived, the defendant urges us to review this instruction issue, arguing that as Michael Bonaquisti was the only occurrence witness to testify, failure to instruct the jury on that point was such a substantial defect that in the interests of justice the waiver rule should be relaxed in this case and the contention considered.

■■ In our opinion, there is no need to relax the waiver rule here. In his closing argument, defense counsel cautioned the jury over and over again to regard Michael Bonaquisti's testimony with suspicion in light of his active participation in the events of that night. Considering that, together with the evidence presented against the defendant at trial, the failure to give such an instruction was not enough to require relaxation of the waiver rule. See *People v. Gerecke* (1977), 45 Ill. App. 3d 510, 359 N.E.2d 1178; see also *People v. Pangburn* (1976), 41 Ill. App. 3d 781, 354 N.E.2d 152.

Finally, defendant contends that his sentence of 100 to 150 years imprisonment fails to take into consideration his potential for rehabilitation.

Illinois decisions have firmly established that the imposition of a sentence is a matter of judicial discretion and that, absent an abuse of this discretion, the sentence imposed by the trial court may not be altered upon review. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) Defendant points out that he was only 22 years old at the time of sentencing; that he had been honorably discharged from the army and had maintained fairly steady employment since then; and that he had only a prior misdemeanor conviction on his record. He argues that such factors indicate good potential for rehabilitation and that the sentence of 100 to 150 years imposed upon him does not therefore indicate that due regard was accorded to the constitutional mandate of sentencing with a view toward restoring him to useful citizenship.

944

On the other hand, the State points to the defendant's presentence report which reveals that defendant was placed under court supervision and sent to the Boys Farm School in Durand for nearly a year; that he spent six months at the Singer Mental Health Center following an incident with his half-brother; and that he began using drugs in the service and for two to three years had used mostly heroin. The defendant was examined by Dr. Thomas Eliseo who described him as an antisocial personality with little concern for anyone but himself, and as a highly impulsive individual. Despite the amount of evidence against him, before sentencing the defendant maintained his innocence and an attitude displaying resistance to any rehabilitation attempts.

■■ Considering the facts stated above and in light of the violent nature and the brutal circumstances of this crime, we are satisfied that the sentence imposed upon this defendant was not the result of an abuse of discretion on the part of the trial court. See *People v. Gerecke.*

Accordingly, we affirm the judgment of the circuit court of Winnebago County.

Affirmed.

SEIDENFELD, P. J., and NASH, J., concur.