STATE of Iowa, Appellee,

v.

Todd Gilbert HOFFER, Appellant.

No. 85–372.

Supreme Court of Iowa.

March 19, 1986.

Rehearing Denied April 16, 1986.

Paul R. Huscher, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., David L. Dorff, Asst. Atty. Gen., and James L. Smith, Co. Atty., for appellee.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, CARTER, and WOLLE, JJ.

SCHULTZ, Justice.

Following a jury trial, defendant Todd Gilbert Hoffer appeals from his judgment and sentence entered upon a conviction of first-degree murder. Iowa Code §§ 707.-1, .2 (1983). The State charged defendant with aiding and abetting the murder of Juanita Weaver. Defendant was also charged with first-degree burglary; however, the burglary charge is only an issue on appeal as it relates to the felony-murder claim. On appeal, defendant challenges: (1) the sufficiency of the evidence to generate a jury question; (2) jury instructions concerning his intoxication defense and the weight and credibility to be given a statement read into evidence; (3) the court's refusal to give jury instructions defining the terms "knowledge" and "specific intent," and regarding evidence of defendant's motive or lack of motive; (4) the admission of photographs and a medical examiner's opinion testimony; and (5) the

county attorney's conduct in closing argument. We affirm.

In reviewing defendant's motions based on the sufficiency of the evidence, we view the evidence in the light most favorable to the State. Iowa R.App.P. 14(f)(2). We consider all of the evidence, *State v. Robinson*, 288 N.W.2d 337, 340 (Iowa 1980), and accept all legitimate inferences which can be fairly and reasonably deducted therefrom. *State v. Rich*, 305 N.W.2d 739, 741 (Iowa 1981). A refusal to grant a motion for judgment of acquittal will withstand challenge if there is substantial evidence tending to support the charge. *State v. Aldape*, 307 N.W.2d 32, 39 (Iowa 1981). Substantial evidence means such evidence as could convince a rational trier of fact that the defendant is guilty of the crime charged beyond a reasonable doubt. *State v. Schertz*, 328 N.W.2d 320, 321 (Iowa 1982).

Our review of the record in accordance with these principles reveals the jury could have found the following. In mid-August of 1984 James Dorsey and Kenneth Weaver stole a 38-caliber revolver which they later sold. Subsequently, the purchaser loaned the revolver to an acquaintance of Weaver who never returned the gun. Dorsey and Weaver borrowed a shotgun from David Bailey in an attempt to get the revolver returned to the purchaser. They intended to threaten Weaver's acquaintance, but when they were unable to locate him they returned the shotgun to Bailey. Thereafter, Dorsey apparently came to the conclusion that Weaver had possession of the revolver, which was still missing on September 2.

On that date a keg beer party was held at an East Des Moines residence defendant shared with several friends. A number of people were at the party including defendant, Dorsey and Bill Lane. Defendant indicated that he started drinking beer at about 4:00 p.m. When asked how much he had to drink at the party, he stated quite a bit, estimating 8 to 10 12-ounce glasses of beer. At about 2:00 a.m. defendant, Dorsey and Lane left the party. Defendant stated that he was going to get a pack of cigarettes. However, before he left he asked a 17-year-old girl whether he should go along with the other two. Defendant later admitted that he learned that Dorsey was going after a gun.

After the three men left the party they went to Bailey's house. Dorsey went into the house and returned with a shotgun. From there they drove directly to Kenneth Weaver's residence and parked in an alley across the street. They exited the vehicle with Dorsey carrying the gun and approached Weaver's apartment. Defendant stated that he was behind Dorsey and when he approached Weaver's apartment the door was open. Defendant later stated to the police that: "I presumed it [the door] was kicked open by Jimmy [Dorsey]." Although Kenneth Weaver was not home, his mother Juanita and Dale Lundstrom were in the bedroom. When Juanita Weaver heard some noise she went into the living room and came upon the three men. Dorsey immediately started shouting at her "Where's that son of a bitch at?"—in obvious reference to Kenneth. Dorsey then fired at her and missed. Juanita ran into the bathroom with Bailey following. Dorsey shot Juanita Weaver at close range killing her. Meanwhile, Lundstrom was either hit or kicked when he attempted to leave the bedroom. Defendant was by the bedroom door at that time and stated that he might have hit Lundstrom. The three men then fled the scene.

I. *Jury question.* Defendant maintains that the evidence presented at trial was insufficient for a jury to find he was guilty beyond a reasonable doubt. He claims his motion for a directed verdict of acquittal should have been sustained and advances two arguments in support of his claim.

■ Initially, he asserts the State did not present sufficient evidence to corroborate admissions he made to the police a day after the killing that were introduced into evidence. Defendant is correct that a confession by him, unless made in open court, will not warrant a conviction unless accompanied with other proof that defendant

committed the offense. Iowa R.Crim.P. 20(4). Defendant was charged with, among other things, aiding and abetting the murder. The State had the burden to present proof, other than the admissions, that defendant assented to or lent countenance and approval to the murder either by active participation in it or by some manner encouraging it prior to or at the time of its commission. *See State v. Phams*, 342 N.W.2d 792, 796 (Iowa 1983).

■ Our review of the record reveals the State presented ample proof of defendant's participation in the murder in addition to defendant's admissions. Several witnesses identified defendant leaving the party with Dorsey and Lane. Two witnesses testified that Dorsey got the shotgun. Several witnesses identified Dorsey at the scene of the crime with two other men. Lundstrom testified that three men entered the apartment and that Dorsey carried a gun. He indicated that the man with long blond hair, not Dorsey, kicked his arm. While he was in the bedroom putting his boots on Lundstrom heard shots fired. Weaver's neighbor identified one of the participants as having blond hair similar to that of the defendant. Several witnesses described the three men's return to the party and testified to the statements they subsequently made. Defendant hid from the police, had his clothes washed, and his hair cut. This evidence and inferences from it show proof other than the admissions that defendant aided and abetted the murder.

■ Secondly, defendant argues that the State failed to prove an element of burglary, specifically that the entry into Weaver's apartment was without right, license or privilege. Defendant admitted to the police that although he could not remember how the door was opened, he presumed it was kicked in by Dorsey. Witnesses testified as to the noise caused by the entrance and some arguing. Soon afterwards there was a killing. This is substantial evidence the three men lacked the right, license or privilege to enter the Weaver apartment. *See State v. Franklin*, 368 N.W.2d 716, 719 (Iowa 1985).

II. *Jury instructions.* Besides attacking two of the jury instructions given, defendant claims that he requested several additional instructions that the court should have submitted. We shall consider each claim separately.

A. *Intoxication defense.* Defendant gave timely notice pursuant to Iowa Rule of Criminal Procedure 10(11)(c) that he intended to rely upon the defense of intoxication. The trial court's instruction on defendant's intoxication was similar but not identical to Iowa Uniform Jury Instruction 210. The jury was instructed that although a person under the influence of intoxicants is not excused from guilt, intoxication may produce a mental disability that can render the person incapable of forming the intent or having the knowledge required for an element of the offense. In the present case defendant asserts the State could only prove him guilty of first-degree murder by showing he aided and abetted the first-degree burglary, another specific intent crime. Defendant claims he could not form the specific intent to commit first-degree burglary because he was intoxicated and challenges the instruction given in three respects.

■ First, defendant attacks the first sentence in the instruction which states: "The defendant claims that at the time and place of the commission of the offense he was intoxicated." Citing *State v. Donovan*, 61 Iowa 369, 16 N.W. 206 (1883), defendant urges that the language in the instruction indicates the court was rendering an opinion on the weight and credibility of defendant's claim. In *Donovan* the trial court instructed "there is some evidence tending to show that defendant was drunk." *Id.* at 370, 16 N.W. at 206. There we held that the use of the word "some" would cause the instruction to be understood "as expressing the opinion of the court as to the quantity and weight of the evidence on the question of defendant's drunkenness." *Id.* We believe defendant's reliance on *Donovan* is misplaced because the first sentence of the instruction in this case did not contain an adjective

similar to "some" which might be interpreted as an opinion regarding the weight and credibility of the claim. Rather, the sentence is a mere statement of defendant's claim without comment.

■ Secondly, defendant maintains the instruction assumed that he committed the offense charged and therefore was guilty. While the instruction did state "commission of the offense," it did not indicate defendant committed the offense. When the instructions are read as a whole, we do not believe the jury was misinformed. The jury was instructed that the law presumed defendant innocent and specified the State had the burden of proving each element of the crimes charged beyond a reasonable doubt. The aiding and abetting instruction detailed that where specific intent is a necessary element of the crime, either defendant must have "entertained that intent or been aware that another defendant or defendants entertained such intent." Further, the jury was instructed that defendant's intoxication was relevant to whether he was capable of forming the specific intent or having the knowledge which is an element of the offense. The instruction specifically pointed out that the State had the burden to "prove all the elements required." We conclude the instruction did not assume defendant committed the offense charged or that he was guilty.

■ Thirdly, defendant complains the trial court refused to specifically instruct the jury that intoxication is a "defense" when it produces such a mental disability, rather than merely a "material issue" of the crime. We recently indicated that "[i]ntoxication is sometimes raised, and often inaccurately referred to as a 'defense,' in criminal prosecutions." *State v. Collins*, 305 N.W.2d 434, 437 (Iowa 1981). We then pointed out that Iowa Code section 701.5 is a codification of our prior law and specifically stated:

The fact that a person is under the influence of intoxicants or drugs neither excuses the person's act nor aggravates his or her guilt, but may be shown where it is relevant in proving the person's specific intent or recklessness at the time of the person's alleged criminal act or in proving any element of the public offense with which the person is charged.

*Id.* The court's instruction essentially incorporated the language of section 701.5. This section does not refer to intoxication as a defense, and defendant was not entitled to have intoxication so designated.

We have considered defendant's other claims concerning this instruction. We find no merit in them and determine that the jury instruction regarding defendant's intoxication claim was correct.

B. *Statements to police officer.* At trial a police officer read a transcript of taped conversations he had with defendant, obtained after the officer had read defendant his Miranda rights. Defendant did not object to the officer's testimony. The marshalling instructions disclosed that defendant contended such statements were not voluntary. Additionally, the jury was instructed to determine the weight and credibility to be given these statements and in doing so to consider such factors as whether the statement was knowingly and intelligently made and understood by defendant.

Defendant, however, objected to the latter instruction on the basis that it did not inform the jury "that if they find that the testimony was not from recollection, refreshed by looking at the notes and memorandum from which the witness clearly testified, but was a mere recitation of the content of those notes without a current present sense recollection of the matter, then they should disregard that." Defendant urges that until the transcribed notes were signed by him, the transcript was merely a memorandum inadmissible into evidence. Defendant urges that he is entitled to the same type of instruction that was given in *State v. Conner*, 241 N.W.2d 447 (Iowa 1976).

■ The problem with defendant's contention is that his objection should have been made at the time the officer was reading the transcript into evidence. A failure to timely object operates as a waiv-

er of any improprieties in the testimony and the issue is not properly before this court. *State v. Johnson*, 272 N.W.2d 480, 483 (Iowa 1978). The timely objection requirement is to alert the trial court of the defect in time to permit its correction, assuming the objection is good. *State v. Grimme*, 274 N.W.2d 331, 337 (Iowa 1979). We do not now decide whether an objection at that time of trial would have been sustained or, if sustained, whether the officer would have been allowed to play the taped conversation to the jury. We do decide, however, that the objection should have been made at the time of the testimony.

■ Additionally, we believe defendant's reliance on *Conner* is misplaced. In *Conner* the officers who interrogated that defendant did not have a tape recording to reduce into transcript form; rather, they reduced their version of defendant's oral statements into a written statement that the defendant refused to sign. 241 N.W.2d at 455. At trial a BCI agent testified about the typing of the document and defendant's refusal to sign the statement after it was read to him. *Id.* at 456. The prosecutor then asked the agent whether the defendant agreed or disagreed with its contents. *Id.* When the witness answered the prosecutor's question, an objection was made and the court on its own motion admonished the jury to disregard the answer. *Id.* Here, we do not have the same situation. In the present case the evidence came in without objection or motion to strike. After both parties had rested, it was proper for the court to refuse to give an instruction to the jury to disregard testimony that was admitted without objection.

C. *Court's refusal to instruct.* In its marshalling instruction the trial court instructed that before defendant can be found guilty of aiding and abetting the murder, the jury must find that James Dorsey did unlawfully shoot Juanita Weaver "with the specific intent to kill her" or that Dorsey's act "was committed in the perpetration of burglary in the first degree." The first-degree burglary instruction noted that the State had to prove defendant and

Dorsey entered Weaver's apartment "with the specific intent to commit an assault." The instruction stated that all persons who directly commit the act constituting the crime or "knowingly" aid and abet its commission are punished the same. The instruction then defined aiding and abetting as "to knowingly assent to a criminal act."

The defendant timely requested the court further define the terms "specific intent" and "knowingly" in the instruction, which the court refused to do. The court stated:

> [I]t is recited in the instruction that it must be proved that there is a specific intent to kill Juanita Weaver. I don't know how much more specific or how much more definitional you can get than that ... so I don't feel the need for or the appropriateness of any more definitional instructions on specific intent.

The court also expressed an opinion that it was unnecessary to define "knowingly" because the term is self-explanatory.

Defendant urges the trial court committed error when it refused to define the term "knowingly" and failed to give the Iowa Uniform Instruction 215 as to "specific intent." While we believe that it would have been appropriate for the court to have given instructions further defining these terms, we do not believe such failure constitutes reversible error.

■ In a criminal trial the court must instruct the jury by defining the crime; however, words in an instruction need not be defined if they are of ordinary usage and are generally understood. *Henderson v. Scurr*, 313 N.W.2d 522, 525 (Iowa 1981); *State v. Kelly*, 224 N.W.2d 456, 458 (Iowa 1974). Technical terms or words of art that have a technical legal meaning, as distinguished from their ordinary meaning, should be defined. *State v. McKinnon*, 158 Iowa 619, 626–27, 138 N.W. 523, 527 (1913).

■ We believe the terms "knowingly," "knowledge" and "specific intent" were used in a general context and are not technical legal terms that require definitions. Defendant objected to the instructions re-

questing a definition of "specific intent" and referred the court to Iowa Uniform Instruction 215A, an instruction on general intent. We assume that defendant meant to refer the court to instruction 215 which defines intent when it is an essential element of the offense. Instruction 215 is defined as follows: "Intent is a mental state, emotion, or condition of the mind with a design, resolve, or determination that the doing of an act shall be with a certain purpose." The instruction further directs that intent may arise from inferences from facts proven and that the jury may infer that a person intended the consequences which follow voluntary acts. The instruction 215 definition of "intent" is very similar to the dictionary definition which is "the state of mind with which an act is done." *Webster's New Collegiate Dictionary* 596 (rev.ed.1981). We believe the requested instruction merely sets out the ordinary meaning of intent. Likewise, we determine that the term "knowledge" is not a term that carries a technical legal meaning. As used in the instructions, it is a word of common usage.

Other jurisdictions have determined that a court does not commit error for failing to define the words "intent" and "knowledge." *See, e.g., U.S. v. Smith,* 635 F.2d 716, 720 (8th Cir.1980) (failure to define "knowledge" was not error); *People v. Ortega,* 181 Colo. 223, 508 P.2d 784, 788 (1973) (to further define the term "specific intent" is unnecessary as the term is in plain understandable English); *People v. Wright,* 57 Ill.App.3d 940, 15 Ill.Dec. 407, 409–10, 373 N.E.2d 753, 755–56 (1978) (failure to give defendant's requested instruction defining "intent" and "knowledge" is not error as they are not technical terms); *State v. Siekermann,* 367 S.W.2d 643, 649 (Mo.1963) (the word "intent" is a word of common use and need not be defined); *State v. Audette,* 128 Vt. 374, 264 A.2d 786, 789 (1970) (the word "intent" was sufficiently within its ordinary use and understanding); *State v. Castro,* 32 Wash.App. 559, 648 P.2d 485, 489 (1982) ("knowledge" has an ordinary and accepted meaning and when used in the context of the accomplice instruction

was not misleading and needed no further explanation).

 Defendant also urges that the trial court should have instructed the jury to consider evidence of defendant's motive, or lack of motive, in the burglary and murder. Although motive is not a necessary element of murder, lack of motive may be considered in determining whether an assailant acted with malice aforethought. *State v. Smith,* 242 N.W.2d 320, 326 (Iowa 1976). However, we specifically held in *State v. Shipley,* 259 Iowa 952, 959, 146 N.W.2d 266, 270 (1966), that it was not reversible error to refuse to give an instruction on motive. We find no reason to reverse this authority.

III. *Evidentiary rulings.* Defendant claims the trial court committed reversible error by admitting photographs taken of the victim after the shooting and opinion testimony which he alleges was based on facts not in the record. We disagree.

 The State presented evidence to show the manner, method, cause and time of death of the victim. Defendant did not attempt to contradict or disprove the State's claim that Juanita Weaver was killed by a single shotgun blast. The trial court allowed the State to submit three photographs into evidence showing decedent's face, forearm, and shoulder after the shooting. Defendant timely objected and claimed the photographs were not probative of any element of the crime and were introduced solely to inflame the passion and prejudice of the jurors. We believe the photographs were clearly relevant. The State had the burden to prove all of the elements of the crime including its claim that the killing was committed with malice aforethought. The photographs supported the medical examiner's opinion that the victim was in a defensive position at the time the fatal shot was fired. The trial court did not abuse its discretion in admitting the photographs. *See State v. Oliver,* 341 N.W.2d 25, 33 (Iowa 1983).

 Defendant next attacks the opinion testimony given by a medical examiner in

response to a hypothetical question posed by the prosecutor. The defendant claims that the medical examiner assumed facts not found in the record in stating his opinion. We need not address defendant's contention since he did not preserve error on this issue because he failed to make a timely objection to the opinion testimony at trial.

IV. *Prosecutor's closing argument.* Defendant claims the prosecutor in effect "created evidence" in his closing argument by stating that the medical examiner had determined defendant's blood-alcohol level. Although defendant concedes the prosecutor can urge all reasonable inferences which may be drawn from the evidence, he asserts the prosecutor went beyond these inferences. We do not agree and believe counsel's argument was permissible.

The medical examiner's calculations were based solely upon hypothetical facts. Those facts were gained from defendant's admissions and from the testimony of witnesses who had observed defendant the evening of the party. Counsel may draw conclusions and argue all permissible inferences that may reasonably flow from the record which do not misstate the facts. *State v. Odem,* 322 N.W.2d 43, 47 (Iowa 1982). The prosecutor's arguments were well within this range.

We have reviewed all claims of error asserted by defendant on this appeal. Although we may not have specifically addressed each claim in this opinion, we have considered them all and find no merit in defendant's contentions. In summary, we find the trial court committed no error.

AFFIRMED.